FILED
2024 Apr-15  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
WESTERN DIVISION**

| | |
|---|---|
| **ANNY PAMELA FOSTER,** *Individually, and as Personal Representative of the Estate of Glenn Foster, Jr.,* <br>            ***Plaintiff,*** <br><br> **v.** <br><br> **TODD HALL, Justin WHITE, Greg CARR, Drew WILBURN, Mickey YOUNG, Ladon HILL, DEMARCO EASTERWOOD, Willie BROWN, Derrick RICHARDSON, and John Does Nos. 1-5,** <br><br>            ***Defendants.*** | **Civil Action No. 7:23-cv-1647-ACA** <br><br><br> **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

Plaintiff Anny Pamela Foster, individually, and as Personal Representative of the Estate of Glenn Foster, Jr., brings this action against Defendants Todd Hall, Justin White, Greg Carr, Drew Wilburn, Mickey Young, LaDon Hill, DeMarco Easterwood, Willie Brown, Derrick Richardson, and John Does Nos. 1-5. Plaintiff seeks to recover damages from the Defendants based on their negligent, unlawful, and unconstitutional misconduct that led to the untimely and entirely avoidable death of her late husband, Glenn Foster, Jr.

1

In support of her claims, the Plaintiff makes the following allegations based upon personal knowledge, information and belief, and her attorneys' investigation as to all other matters:

## INTRODUCTION

This case is the inevitable result of a well-known history and tradition of violence and gross negligence towards Black men who have been taken into custody by the Pickens County Sheriff's Office and/or detained in the Pickens County Jail.

Glenn Foster, Jr., was a loving husband, a dedicated father of four young daughters, a son, a brother, and a friend to many. He was also a businessman, a mentor, and a former player in the National Football League ("NFL"). On December 4, 2021, while traveling from his home in Metairie, Louisiana, to Atlanta, Georgia, for work, Glenn Foster, Jr. (hereinafter, "Mr. Foster" or "Glenn, Jr."), was stopped by law enforcement in Pickens County, Alabama, for allegedly driving in a reckless manner and evading police capture. He was arrested by officers of the City of Reform, Alabama, Police Department and subsequently transferred to the Pickens County Jail.

While in the custody of the Pickens County Sheriff's Office from December 4 to December 6, 2021, Glenn Foster, Jr., was repeatedly denied medical care despite the Defendants' knowledge of his serious mental health issues that affected his ability to understand the nature of his actions, the Defendants' instructions, or the

legal proceedings against him. Mr. Foster was also subjected to excessive uses of force. He was stripped naked in a jail cell, restrained to a chair, and then repeatedly beaten, tased, and choked—to the point he lost consciousness—by a Pickens County sheriff's deputy and a correctional officer.

On December 6, 2021, while being loaded into a vehicle for transportation to a nearby medical facility, Mr. Foster was grabbed by the neck, pulled into the vehicle, and strangled to the point he could not breathe by the Administrator of the Pickens County Jail, Defendant Justin White, while the other Defendants watched and did nothing. He was dead by the time the vehicle arrived at the hospital, roughly 30 minutes after leaving the jail.

Defendants' excessive and barbaric uses of force not only violated Mr. Foster's constitutional rights—they robbed the Foster family of a son, a father, and a husband. On behalf of herself, Mr. Foster's family, and his Estate, Plaintiff Anny Pamela Foster brings this action to hold the Defendants accountable by seeking to recover monetary damages for their injuries caused by the Defendants' unconstitutional conduct, which caused the death of Glenn Foster, Jr.

## PARTIES

### I.    The Plaintiff

1.      <u>Plaintiff Anny Pamela Foster</u> is the widow of Glenn Foster, Jr.  Mr. and Mrs. Foster celebrated their 10th wedding anniversary in October 2021—less than two months before his death.

2.      Ms. Foster is also the mother of Mr. Foster's four daughters, the youngest of whom was only one-and-a-half when he died.

3.      On December 20, 2021, Plaintiff Anny Pamela Foster was appointed by the 24th Judicial District Court for the Parish of Jefferson in the State of Louisiana as the Independent Administrator for the Estate of Glenn Foster, Jr. As the Administrator for the Estate, Mrs. Foster has capacity and standing to bring this action on behalf of the wrongful death beneficiaries of Glenn Foster, Jr. pursuant to Ala. Code § 6-5-410.

4.      Accordingly, Ms. Foster brings this action and asserts claims against the Defendants on behalf of herself, individually, and as Personal Representative of the Estate of Glenn Foster, Jr.

### II.   The Defendants

5.      <u>Defendant Todd Hall</u> was, at all times relevant hereto, the Sheriff of Pickens County, Alabama. Defendant Hall is sued in his individual capacity. Upon

information and belief, Defendant Hall is, and at all times relevant was, a citizen of the State of Alabama.

6. Defendant Justin White was, at all times relevant hereto, the Administrator of the Pickens County Jail. Defendant White is sued in his individual capacity. Upon information and belief, Defendant White is, and at all relevant times was, a citizen of the State of Alabama.

7. Defendant Greg Carr was, at all times relevant hereto, the Chief Deputy Sheriff of Pickens County. Defendant Carr is sued in his individual capacity. Upon information and belief, Defendant Carr is, and at all relevant times was, a citizen of the State of Alabama

8. Defendant Drew Wilburn was, at all times relevant hereto, a Lieutenant Deputy of Pickens County. Defendant Wilburn is sued in his individual capacity. Upon information and belief, Defendant Wilburn is, and at all relevant times was, a citizen of the State of Alabama.

9. Defendant Mickey Young was, at all times relevant hereto, a Sheriff's Deputy of Pickens County. Defendant Young is sued in his individual capacity. Upon information and belief, Defendant Young is, and at all relevant times was, a citizen of the State of Alabama.

10. Defendant LeDon Hill was, at all times relevant hereto, the a Corrections Officer at the Pickens County Jail. Defendant Hill is sued in his

individual capacity. Upon information and belief, Defendant Hill is, and at all relevant times was, a citizen of the State of Alabama.

11.     Defendant DeMarco Easterwood is and was, at all times relevant hereto, a Corrections Officer at the Pickens County Jail. Defendant Hill is sued in his individual capacity. Upon information and belief, Defendant Hill is, and at all relevant times was, a citizen of the State of Alabama.

12.     Defendant Willie Brown is and was, at all times relevant hereto, a Corrections Officer at the Pickens County Jail. Defendant Brown is sued in his individual capacity. Upon information and belief, Defendant Brown is and was, and at all relevant times, a citizen of the State of Alabama.

13.     Defendant Derrick Richardson is and was, at all times relevant hereto, an Officer at the Pickens County Jail. Defendant Richardson is sued in his individual capacity. Upon information and belief, Defendant Richardson is and was, and at all relevant times, a citizen of the State of Alabama.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as certain claims asserted herein arise under the Constitution and the laws of the United States, including the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

15.     This Court also has supplemental jurisdiction over the state law claims

asserted herein pursuant to 28 U.S.C. § 1367 because they are so related to the claims in this action with this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

16.     This Court may properly exercise personal jurisdiction over all Defendants domiciled in the State of Alabama.

17.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## FACTUAL BACKGROUND

### I.     The Death of Glenn Foster, Jr.

18.     Glenn Foster, Jr., was last seen by his family at his home in Metairie, Louisiana, on Friday, December 3, 2021. He left that afternoon traveling to Atlanta, Georgia, for work.

19.     On December 3, 2021, Glenn Foster, Jr. (hereinafter, "Mr. Foster" or "Glenn, Jr."), was stopped by law enforcement in Gordo, Alabama, while traveling along Highway 82 for allegedly driving recklessly and evading police capture.

20.     Mr. Foster was arrested by officers of the City of Reform, Alabama, Police Department with assistance of Pickens County Sheriff's Deputies, including Defendants Mickey Young and Drew Wilburn.

21.    At one point during the December 3rd arrest, Defendant Young wrestled Mr. Foster to the ground and slammed his head into the concrete. Defendant Wilburn was present at the scene and observed the incident.

22.    After Mr. Foster had been handcuffed and arrested, an ambulance arrived at the scene. EMS medical personnel informed Defendants Young and/or Wilburn, as well as other law enforcement officers, that Mr. Foster needed a prompt mental health and wellness check. Despite the advice of trained medical professionals, the Defendants refused and/or failed to provide Mr. Foster with such an evaluation.

23.    Mr. Foster was subsequently booked into the Pickens County Jail—and thus placed in the care, custody, and control of the Pickens County Sheriff's Office— shortly after midnight on December 4, 2021.

**A.    Glenn Foster, Sr., informs officers about his son's mental health issues and pleads with them to provide the psychiatric care and attention he needs.**

24.    On Saturday, December 4, 2021, Chief of Police for the City of Reform, Alabama, Patrick D. Smith, contacted Glenn Foster, Sr. ("Foster, Sr."), and informed him that his son, Glenn Foster, Jr., had been arrested and taken into police custody.

25.    Chief Smith informed Foster, Sr., that law enforcement conducted a traffic stop on December 3, 2021, arrested Mr. Foster, and charged him with reckless endangerment, attempting to elude officers, and resisting arrest.

26.    In response, Foster, Sr., informed Chief Black that Glenn Foster, Jr., suffered from mental health issues that impaired his judgment and caused him to be especially agitated and/or aggressive under stress.

27.    For example, Foster, Jr., was diagnosed with bipolar disorder in 2011, at age 21.

28.    Foster, Jr., also had a history of impulsive behavior and aggression when placed under extreme stress—likely caused by repeated head injuries he incurred throughout his tenure as an NFL football player.[1]

29.    In light of Foster, Jr.'s mental health issues, Foster, Sr., pleaded with Chief Black to make arrangements for Foster, Jr., to be transferred to the psychiatric ward at the University of Alabama in Birmingham ("UAB") hospital. Chief Black agreed to the transfer.

30.    Relying on Chief Black's assurance, the Foster family immediately contacted the UAB Hospital and scheduled a medical evaluation for Mr. Foster for the following day.

---

[1] Mr. Foster's family believes that he likely suffered from chronic traumatic encephalopathy, or "CTE," which can only be definitely diagnosed after death through a brain autopsy. CTE is most commonly found in the brains of people who played contact sports, such as football or boxing, and veterans who were frequently exposed to concussive blasts.

**B.      The Pickens County Jail refuses to release Glenn Foster, Jr., denying him the medical care he needs.**

31.     Mr. Foster's family arrived at the Reform Police Department on Sunday, December 5, 2021, and paid his bond.

32.     Pursuant to an Order of the Reform Municipal Court, as part of Mr. Foster's "conditional bond," the Reform Police Department was directed to provide transportation for Mr. Foster to UAB so that he could receive a medical evaluation. Chief Black arranged for such transportation, and ensured that the family would be able to accompany the Reform police officers throughout the transport.

33.     On the afternoon of December 5, 2021, Reform police officers escorted the family to the Pickens County Jail to facilitate Mr. Foster's release.

34.     Upon the family's arrival at the Pickens County Jail, the family and Chief Black were informed by a Pickens County Sheriff's Deputy that Mr. Foster would not be released from the custody of the Pickens County Sheriff—despite the family having satisfied Mr. Foster's bond.

35.     Prior to the family's arrival at the Jail, Pickens County Sheriff, Defendant Todd Hall, had re-booked Mr. Foster on a new set of charges for an alleged physical altercation with another inmate that occurred while Mr. Foster was allegedly attempting to steal the inmate's socks.

36.    Mr. Foster's mother spoke with Defendant Hall later that day and pleaded with him to ensure that Mr. Foster received adequate medical attention in light of his mental health issues. Once again, Defendant Hall refused.

**C.     Defendants Mickey Young and Ladon Hill tortured, tased, and abused Glenn Foster, Jr., throughout the evening of December 5th, in violation of his Fourth, Fifth, and Fourteenth Amendment rights.**

37.    On or about the evening of December 5, 2021, while Mr. Foster was confined in the Pickens County Jail, Defendants Young, Hill, and/or other officers at the Pickens County Jail, removed Mr. Foster from his cell and restrained him to a chair in another cell.

38.    While Glenn Foster, Jr., was restrained and unable to move, Defendants Young, Hill, and/or other officers at the Pickens County Jail placed Mr. Foster in a headlock, causing him to choke and restricting his ability to breathe.

39.    While Glenn Foster, Jr., was restrained and unable to move, Defendants Young, Hill, and/or other officers at the Pickens County Jail began repeatedly tazing Mr. Foster without any need or justification. Upon information and belief, the Defendants deployed their tasers on Mr. Foster in both dart-firing and drive stun modes.

40.    While Glenn Foster, Jr., was restrained and unable, Defendants Young, Hill, and/or other officers at the Pickens County Jail stripped Mr. Foster naked,

poured water on him, and continued to taze him. Upon information and belief, Mr. Foster fell over onto the floor and vomited blood.

41.   The Defendants continued to taze while Mr. Foster remained on the floor, lying in a puddle of his own vomit and soaked in the water Defendants poured on him. Mr. Foster lost consciousness as a result.

42.   Multiple witnesses—including, but not limited to, other inmates, detainees, officers, and staff at the Pickens County Jail observed Defendants Young and Hill laughing as they tased, tortured, and abused Glenn Foster, Jr., throughout the evening and into the night of December 5, 2021.

43.   At some point during the night of December 5th, an officer, nurse, or other employee at the Pickens County Jail contacted emergency medical services and requested that a vitality check be performed on Mr. Foster. Upon their arrival, however, EMS personnel were denied the opportunity to conduct a complete examination of Mr. Foster by Defendants Hall, White, Young, Hall, and/or other officers or employees of the Pickens County Jail.

44.   EMS personnel urged the Defendants to immediately transfer Mr. Foster to a hospital so that he could receive necessary medical treatment. Nevertheless, the Defendants refused.

45.   Mr. Foster remained in the Pickens County Jail throughout the night and did not receive any medical evaluation or medical treatment.

**D.**   **Judge Samuel W. Junkins finds Mr. Foster's competency "questionable" and orders him to undergo an immediate mental health evaluation.**

46.   On the morning of December 6, 2021, the Foster family met with the Honorable Samuel W. Junkins, District Judge for the District Court of Pickens County, Alabama, and requested that Judge Junkins declare Mr. Foster incompetent.

47.   After speaking with the family, Judge Junkins subsequently entered an Order that same day at 12:26 p.m., "finding [that] reasonable grounds exist to question [Mr. Foster's] competency," and ordering that he be examined—in-person—by a psychiatrist or psychologist approved by the Alabama Department of Mental Health and Mental Retardation to determine whether Mr. Foster had the mental competency to understand the legal charges and proceedings against him.

**E.**   **Defendant Justin White strangles Mr. Foster while loading him into a vehicle for transportation to the hospital.**

48.   In accordance with Judge Junkin's Order, the Defendants made arrangements to transfer Mr. Foster to the Northport Medical Center in Northport, Alabama.

49.   At approximately 3:00 p.m. on December 6, 2021, Mr. Foster was escorted by the Defendants to the sally port of the Pickens County Jail, where he was restrained via handcuffs and metal chains around his wrists, ankles, and waist.

50.   The Defendants sat Mr. Foster on the edge of the transfer vehicle's back seat, with his legs handing outside of the vehicle.

51.     Mr. Foster remained still and did not move further into the transport vehicle.

52.     The Defendants then used physical force to push Mr. Foster into the vehicle; however, Mr. Foster did not move.

53.     At that point, Defendant Justin White walked to the opposite side of the transport vehicle, placed his hands and/or arms around Mr. Foster's neck, and yanks Mr. Foster from behind, by the neck, pulling him into the vehicle.

54.     Upon information and belief, Defendants Todd Hall, Justin White, Mickey Young, LeDon Hill, Drew Wilburn, DeMarco Easterwood, Willie Brown, and Derrick Richardson were each present in the sally port during this incident and each observed and/or personally participated in the use of excessive force on Mr. Foster during his transportation from his cell in the Pickens County Jail to the Northport Medical Center.

**F.     Glenn Foster, Jr. succumbs to his injuries by the time he arrives at the hospital.**

55.     The transport vehicle arrived at the Northport Medical Center at approximately 3:39 pm on December 6, 2021.

56.     Upon information and belief, one of the Defendants told the nurses and physicians who greeted them at the entrance, "I don't think he's breathing."

57.     Emergency medical staff first observed Mr. Foster while he was still lying on his back in the transport vehicle. They found him unresponsive and foaming

at the mouth and nostrils. His skin was discolored, and his hands and feet remained handcuffed.

58.     Medical staff checked Mr. Foster's pulse and, not finding one, immediately began performing chest compressions. They continued the compressions for approximately 30 minutes, to no avail.

59.     On December 6, 2021, at approximately 4:15 in the evening, Glenn Foster, Jr., was pronounced dead.

**G.     The Defendants' unconstitutional use of excessive force and their failure to provide medical attention directly caused the death of Glenn Foster, Jr.**

60.     The Defendants' use of excessive force and failure to provide medical attention directly caused the death of Glenn Foster, Jr.

61.     Each of the Defendants were aware that Glenn Foster, Jr. suffered from one or more mental health conditions that made him unable to understand the nature of his actions, the Defendants' instructions to him, or the legal proceedings against him.

62.     Despite their awareness, the Defendants' continued to provoke and abuse Mr. Foster by using a level of force far beyond what was necessary to achieve compliance with their instructions or to secure the safety of themselves and others.

63.     Mr. Foster was restrained to a chair—and thus unable to move, much less harm anyone—while Defendants Young and Hill repeatedly tortured, tased, and choked him throughout the evening and into the night of December 5, 2021.

64.     Similarly, Mr. Foster's hands were cuffed, and chains restrained his wrist, waist, and ankles, when Defendant White used a chokehold maneuver to force Mr. Foster into the transport vehicle on the afternoon of December 6, 2021.

65.     Upon information and belief, Mr. Foster never spoke again after Defendant White used a chokehold maneuver to force him into the transport vehicle.

66.     Upon information and belief, the moment Mr. Foster was forced into the transport vehicle is the last confirmation that Mr. Foster was alive.

67.     Upon information and belief, Mr. Foster makes no movements during transport to Northport Medical Center, he remains slumped over in the backseat.

68.     Upon information and belief, video cameras are set up in the sally port and captured footage of Defendants use of excessive force while loading Mr. Foster into the transport vehicle on December 6th. However, the Defendants have not released the footage publicly and have refused to share the footage with the Plaintiff, her attorneys, or any other member of Mr. Foster's family. Similarly, the Defendants refused to share the footage with the state investigator assigned to investigate Mr. Foster's death.

69.    The Defendants' acts and omissions relating to the care and safety of Glenn Foster, Jr., violated Mr. Foster's constitutional rights under the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, which encompasses an arrestee's right to be free from excessive uses of force by law enforcement.

70.    The Defendants' acts and omissions relating to the care and safety of Glenn Foster, Jr., violated Mr. Foster's constitutional right to Due Process under the Fourteenth Amendment, which provides pretrial detainees with the right to be free from excessive uses of force by law enforcement and the right to receive adequate medical care and attention during their detention.

71.    Finally, the Defendants' acts and omissions relating to the care and safety of Glenn Foster, Jr., violated Mr. Foster's constitutional rights under the Fifth and Fourteenth Amendment, which provide individuals with the right to be free from punishment—including overly harsh conditions of their confinement or restraints during pretrial detention—prior to an adjudication of guilt in accordance with due process.

72.    The injuries Mr. Foster suffered as a result of Defendants' unconstitutional uses of excessive force and their failure to provide medical attention proximately caused the death of Glenn Foster, Jr.

## II. A History of Widespread Abuse by the Pickens County Sheriff, His Deputies, and Correctional Officers at the County Jail.

69.     Glenn Foster, Jr., is the third Black man to die as result of unconstitutional conduct by the Pickens County Sheriff and Sheriff's Deputies.

70.     The Pickens County Sheriff's Office has a history of its officers, agents, and employees violating the clearly established constitutional rights of suspects, detainees, and inmates through its policy and custom of using excessive force, failing to recognize their serious medical needs, and failing (or refusing) to provide them with adequate medical attention.

### A. Wallace Wilder

71.     On August 28, 2019, Wallace Wilder, a 62-year-old mentally-ill Black man, was wrongly and needlessly shot and killed by Defendant Hall and Pickens County Sheriff's Deputy Latham ("Deputy Latham").

72.     On August 28, 2019, Defendant Hall, along with Pickens County deputies and other officers of the sheriff's department, responded to a neighbor's request for a wellness check after hearing noise coming from Wilder's apartment.

73.     Wilder had a long and documented history of mental illness—schizophrenia, to be specific—of which Defendant Hall and the other deputies were aware due to previous encounters with Wilder.

74.     Upon their arrival at Wilder's residence, Pickens County sheriff's deputies tried to gain entry into Wilder's residence. Wilder refused. The deputies

and other officers then attempted to forcefully enter Wilder's home–under Defendant Hall's supervision and instruction—kicking down Wilder's door.

75.    Deputy Latham and other officials tased and subdued Wilder upon breaking down his door. But when Wilder tried to get back up, Defendant Hall and Deputy Latham fired five shots, killing Wilder.

**B.    Michael Broady, Jr.**

76.    Michael Broady, Jr., died in August 2021—only four months before Glenn Foster, Jr.—while in the custody of the Pickens County Sheriff's Office as a result of excessive force used by Pickens County Sheriff's Deputies.

77.    Broady called 911 on August 22, 2021, reporting that another individual threatened to kill him while he was at a house in Reform, Alabama. Two Pickens County sheriff's deputies responded to the scene along with officers of the Cities of Reform and Gordo, Alabama.

78.    The Pickens County sheriff's deputies and other officers involved knew Broady from previous interactions and knew that Broady suffered from mental health issues.

79.    At some point during the response, Broady was arrested on a warrant based on a child support issue. He was voluntarily placed in handcuffs.

80.     Shortly afterwards, Broady was tackled to the ground after the arresting officers suspected that he had called 911 again. The officers repeatedly tased and drive stunned Broady multiple times while he was on the ground and handcuffed.

81.     Broady was placed in the back of a police vehicle and transported to the Pickens County Jail.

82.     Broady died at some point during the transportation to the Pickens County Jail or shortly after his arrival as a result of either the excessive tasing he experienced, the deputies' failure to provide medical care, something else that happened while he was in the Defendant Hall's custody, or some combination of the three.

83.     As in the present case, Defendant Hall refused to give any information to Broady's family or provide body camera footage of the events leading to Broady's death.

84.     Broady's Estate sued Defendant Hall and the other Pickens County deputies on August 18, 2023. The case remains pending in the Northern District of Alabama before Judge Coogler. *See Broady v. Herd et al.*, No. 7:23-cv-01097-LSC.

**C.     Other Instances of Excessive Force**

85.     In addition to the deaths of Wallace Wilder; Michael Broady, Jr.; and Glenn Foster, Jr.; there have been numerous other instances of excessive force and

medical neglect by the Defendants and officers of the Pickens County Sheriff's Office.

86.    For example, in a widely-publicized incident in December 2023, 24-year-old Micah Washington was tased excessively by a Reform police officer while a Pickens County sheriff's deputy was on the scene and did nothing to stop it.

## III.    Defendants' Spoliation of Evidence

87.    In addition to the claims set forth below, Defendants have failed to provide and have effectively lost or destroyed evidence germane to the last known moments that Mr. Foster was alive within Pickins County Jail.

88.    Defendants were in full custody and control of all video recordings within Pickins County Jail. At the time of Mr. Foster's death, Defendants knew or should have known that the events leading up to and including his death on December 6, 2021, were likely to lead to litigation, as a reasonable person would have or should have known that an investigation and potential litigation pertaining to these events would ensue.

89.    Plaintiff was informed that Defendants would not turn over vital video evidence recorded at Pickens County Jail because these recordings allegedly no longer exist.

90.    Defendants had actual knowledge of pending or potential litigation pertaining to Plaintiff's claims by December 10, 2021.

91.    At this time, Defendants had a duty that was imposed by the preservation notice to preserve and maintain evidence.

92.    Defendants violated this duty when vital evidence depicting the final moments of Mr. Foster's life was lost or destroyed.

## CAUSES OF ACTION

### Count I:
### WRONGFUL DEATH
*Against All Defendants*

93.    The Plaintiff incorporates by reference the allegations contained in paragraphs 1-92.

94.    Plaintiff Anny Pamela Foster, as Personal Representative and the Individual Administrator of the Estate of Glenn Foster, Jr., brings this claim against all Defendants in their individual capacities pursuant to Ala. Code § 6-5-410 and 42 U.S.C. § 1983 to recover damages for the wrongful death of Mr. Foster caused by the Defendants' unlawful acts and omissions which violated the Plaintiff's and Estate's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments.

95.    Mr. Foster's death was the direct and proximate result of Defendants' wanton and malicious actions, including subjecting Mr. Foster to torture and refusing to provide critical and recommended medical evaluation and treatment.

96.    Defendants Hall, White Carr, Wilburn, Young, Hill, Easterwood, excessively assaulted, battered, beat, tased, and strangled him and intentionally

refused to provide adequate medical assistance.

97.    Defendants Hall, Carr, Wilburn, White, Young, Hill and Easterwood's actions caused Mr. Foster severe pain and suffering, and he ultimately died from his injuries. Defendants did not have legal justification for using excessive force against Mr. Foster and said use of force against Mr. Foster was objectively unreasonable.

98.    As a direct and proximate result of Defendants Hall, Carr, Wilburn, White, Young, Hill and Easterwood's conduct as alleged above, Plaintiff and Mr. Foster were injured.

99.    Plaintiff seeks punitive damages, in accordance with Ala. Code § 6-5-410 and 42 U.S.C. § 1983, in the maximum amount allowable by law to punish Defendants Hall, Carr, Wilburn, White, Young, Hill and Easterwood for their wanton and malicious actions that resulted in the death of Mr. Foster.

## Count II:
## <u>EXCESSIVE FORCE</u>
*Against All Defendants*

100.   Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-92.

101.   Plaintiff Anny Pamela Foster, as personal representative of the Estate of Glenn Foster, Jr., brings this claim under 42 U.S.C. § 1983 and Ala. Code § 6-5-410, against all Defendants in their individual capacities based on the Defendants'

unconstitutional acts and omissions that proximately caused the death of Glenn Foster, Jr.

102.   The Defendants' acts and omissions relating to the care and safety of Glenn Foster, Jr., violated Mr. Foster's constitutional rights under the Due Process Clause of the Fourteenth Amendment, which prohibits the use of excessive force by law enforcement on pretrial detainees, and which provides pretrial detainees with the right to receive adequate medical care and attention during their confinement.

103.   The Defendants' acts and omissions relating to the care and safety of Glenn Foster, Jr., also violated Mr. Foster's constitutional rights under the Fourth Amendment, which gives individuals the right to be free from unreasonable searches and seizures by law enforcement, and which encompasses an arrestee's right to be free from excessive uses of force.

104.   Finally, the Defendants' acts and omissions relating to the care and safety of Glenn Foster, Jr., violated Mr. Foster's constitutional rights under the Fifth and Fourteenth Amendment, which provide individuals with the right to be free from punishment—including overly harsh conditions of their confinement or restraints during pretrial detention—prior to an adjudication of guilt in accordance with due process.

105.   At the aforementioned time and place, the Defendants (including, but not limited to, Defendants Young and Hill) acted under the color of state law on

December 5, 2021, when they used unnecessary, outrageous, and objectively unreasonable amounts of excessive force on Mr. Foster by repeatedly assaulting, beating, tasing, and strangling Mr. Foster while he was restrained to chair, causing Mr. Foster to vomit blood, become unable to breathe, and lose consciousness.

106.   At the aforementioned time and place, the Defendants (including, but not limited to, Defendants White, Hall, Young, Wilburn, Brown, Richardson, and any other Defendant who was present) acted under the color of state law on December 6, 2021, when Defendants—especially Defendant White—used excessive force on Mr. Foster by using a chokehold maneuver to load Mr. Foster into the police transport vehicle, causing him to become unable to breathe and, ultimately, his death.

107.   In both of the instances described above, Mr. Foster was restrained and did not pose any threat to the safety of himself, the Defendants, or others.

108.   In both of the instances described above, the level of force used by the Defendants was unnecessary.

109.   In both of the instances described above, Defendants' made no effort to temper or limit the amount of force used.

110.   In both of the instances described above, the Defendants' intended to punish, injure, and/or discipline Mr. Foster, a pretrial detainee who had not received a formal adjudication of guilt in accordance with due process.

111.   In both of the instances described above, the conditions of Mr. Foster's

confinement and the methods of restraints that the Defendants used on him severely curtailed his constitutional rights under the Fifth and Fourteenth Amendments.

112.   Such conditions and restraints evince Defendants' intent to punish, injure, and/or discipline Mr. Foster in violation of the Constitution, as they were not reasonably related to any non-punitive goal, and less-restrictive and/or less-harmful methods could have been used to quell any *legitimate* governmental concerns such as limiting Mr. Foster's escape or protecting the safety of Mr. Foster, the officers who interacted with him, and others.

113.   In using such force, and in failing and/or refusing to provide adequate medical care to Mr. Foster in a timely manner, Defendants acted with deliberate indifference and/or completely disregarded an extreme risk to Mr. Foster's health and safety.

114.   The Defendants' aforementioned uses of excessive force against Mr. Foster and their deliberate indifference to the extreme risk to his health and safety caused Mr. Foster to suffer physical injuries which independently or collectively caused his untimely death.

115.   The Defendants' aforementioned uses of excessive force violated Mr. Foster's clearly established rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

116.   Under the same or similar circumstances, a reasonable law enforcement

officer would or should have known that the aforementioned uses of force at issue, including deadly force, violated Mr. Foster's clearly established Fourth and Fourteenth Amendments rights to be free from excessive force.

117.   Under the same or similar circumstances, a reasonable law enforcement officer would or should have known that the aforementioned uses of force at issue, including deadly force, violated Mr. Foster's clearly established rights under the Fifth and Fourteenth Amendments, as a pretrial detainee, to be free from punishment—including overly harsh conditions of confinement and/or restraints— prior to an adjudication of guilt in accordance with due process.

118.   As a direct and proximate result of Defendants' wrongful use of force in violation of Mr. Foster's clearly established Fourth, Fifth, and Fourteenth Amendment rights, as set forth in the above Paragraphs, Plaintiff has been damaged, including but not limited to: intense physical pain, mental pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, depression, mental and emotional distress, extreme fear, anxiety, loss of sense of personal safety and dignity, loss of enjoyment of life, funeral expenses, loss of future earnings, economic damages, the pecuniary value of Mr. Foster's life, and all other damages allowed by law.

**Count III:**
**FAILURE TO INTERVENE**
*Against All Defendants*

119.   Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-92.

120.   Plaintiff brings this claim under 42 U.S.C. § 1983 and Ala. Code § 6-5-410 against all Defendants in their induvial capacities based on their failure to intervene to (a) stop the excessive force used on Mr. Foster, and (b) take steps to ensure that Mr. Foster received adequate medical care and attention.

121.   The Defendants' acts and omissions relating to the care and safety of Glenn Foster, Jr., violated Mr. Foster's constitutional rights under the Due Process Clause of the Fourteenth Amendment, which prohibits the use of excessive force by law enforcement on pretrial detainees.

122.   The Defendants' acts and omissions relating to the care and safety of Glenn Foster, Jr., also violated Mr. Foster's constitutional rights under the Fourth Amendment, which gives individuals the right to be free from unreasonable searches and seizures by law enforcement, and which encompasses an arrestee's right to be free from excessive uses of force.

123.   Each Defendant was in a position to intervene to (a) stop the excessive force used on Mr. Foster, and (b) take steps to ensure that Mr. Foster received adequate medical care and attention.

124.   Upon information and belief, one or more of the Defendants, if not all, were present from December 4-6, 2021, when officers at the Pickens County Jail (including, but not limited to, Defendants Young and Hill) used excessive force on Mr. Foster.

125.   Upon information and belief, one or more of the Defendants, if not all, observed officers at the Pickens County Jail (including, but not limited to, Defendants Young and Hill) repeatedly and unjustifiably beat, tase, and choke Mr. Foster on or about December 5, 2021, *while* Mr. Foster was restrained, in violation of Mr. Foster's constitutional right to be free from excessive uses of force by law enforcement. Defendants had a duty to intervene to prevent such use of excessive force, could have intervened to stop it, and failed to do so.

126.   For example, the Defendants could have reported the officers' actions to Sheriff Hall, Administrator White, another supervisor, or another law enforcement officer who could have authoritatively or physically stopped their unlawful conduct. The Defendants, as fellow law enforcement officers, could have also physically intervened, themselves, to stop the officers' abuse. Or, they could have simply asked the officers to stop their unlawful actions, citing safety concerns. Instead, they did nothing.

127.   The Defendants' failure to intervene to prevents the officers' use of excessive force towards Mr. Foster on December 5, 2021, was not only a violation

of Mr. Foster's constitutional rights, but also a direct and proximate cause of Mr. Foster's death.

128.   The officers' (including, but not limited to, Defendants Young and Hill) use of excessive on Mr. Foster was unnecessary and without justification and caused Mr. Foster to lose consciousness and put him in serious need of prompt medical attention—in addition to the medical attention he already needed for his mental health condition—of which one or more of the Defendants, if not all, were aware.

129.   Despite their knowledge of Mr. Foster's serious medical needs, the advice of trained medical professionals, and their ability and opportunity to make arrangements for Mr. Foster to receive adequate medical attention, the Defendants deliberately ignored Mr. Foster's needs and refused to provide him with the prompt and adequate medical attention that he required.

130.   The Defendants' failure to intervene to ensure that Mr. Foster received the medical care he required was not only a violation of Mr. Foster's constitutional rights, but also a direct and proximate cause of Mr. Foster's death.

131.   Upon information and belief, Defendants Hall, Young, Richardson, and one or more other Defendants, if not all, were present on December 6, 2021, when Defendant Justin White used excessive force to get Mr. Foster in the transport vehicle.

132. Upon information and belief, Defendants Hall, Young, Richardson, and one or more other Defendants, if not all, observed Defendant White enter the transport vehicle from the other side, crawl across the seats, place Mr. Foster in a chokehold, and pull/yank Mr. Foster by the neck inside the vehicle, choking him.

133. These Defendants had a duty to intervene to stop or prevent White's and/or other Defendants' excessive use of force on Mr. Foster.

134. Upon information and belief, these Defendants had the ability and opportunity to intervene to stop or prevent White's and/or other Defendants' excessive use of force on Mr. Foster, yet they failed (or refused) to do so.

135. For example, the Defendants could have immediately reported Defendant White's conduct to Sheriff Hall, another supervisor, or another law enforcement officer who could have authoritatively or physically stopped his unlawful conduct. The Defendants, as fellow law enforcement officers, could have also physically intervened, themselves, to stop Defendant White. Or, they could have asked Defendant White to stop forcing Mr. Foster into the vehicle by pulling/yanking Mr. Foster by his neck, citing safety concerns. Instead, they did nothing.

136. The excessive force used by Defendant White in loading Mr. Foster into the transport vehicle was not only violated Mr. Foster's constitutional rights

under the Fourth and Fourteenth Amendments, but also directly caused Mr. Foster's death.

**Count IV:**
**<u>SUPERVISORY LIABILITY FOR FAILURE TO STOP</u>**
*Against Defendants Todd Hall, Justin White, Greg Carr,*
*Drew Wilburn, and Mickey Young*

137.   Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-92.

138.   Plaintiff Anny Pamela Foster, as personal representative of the Estate of Glenn Foster, Jr., brings this claim under 42 U.S.C. § 1983 and Ala. Code § 6-5-410, against Defendants Todd Hall, Justin White, Greg Carr, Drew Wilburn, and Mickey Young in their individual capacities based on the Defendants' failure to stop the unconstitutional acts and omissions of their subordinate officers, which proximately caused the death of Glenn Foster, Jr.

139.   The Defendants' failure to stop the unconstitutional acts and omissions of their subordinate officers relating to the care and safety of Glenn Foster, Jr., violated Mr. Foster's constitutional rights under the Due Process Clause of the Fourteenth Amendment, which guarantees that individuals shall not be "deprive[d] of life, liberty, or property, without due process of law," and prohibits the use of excessive force by law enforcement on pretrial detainees.

140.   The Defendants' failure to stop the unconstitutional acts and omissions of their subordinate officers relating to the care and safety of Glenn Foster, Jr., also

violated Mr. Foster's constitutional rights under the Fourth Amendment, which gives individuals the right to be free from unreasonable searches and seizures by law enforcement, and which encompasses an arrestee's right to be free from excessive uses of force.

141.   Defendants Todd Hall, as Sheriff of Pickens County; Justin White, as the Administrator of the Pickens County Jail; Greg Carr, as Chief Deputy Sheriff; Drew Wilburn, as Lieutenant Deputy Sheriff; and Mickey Young, as Deputy Sheriff; each had authority over their subordinate officers and employees, whose unlawful acts and omissions caused the wrongful and unjustifiable death of Glenn Foster, Jr.

142.   Despite having the ability to do so, Defendants never exercised their authority over their subordinates to stop their unlawful misconduct.

143.   By failing to stop their subordinates' unconstitutional conduct of which they were aware, Defendants Hall, White, Carr, Wilburn, and Young violated Mr. Foster's constitutional rights under the Fourth and Fourteenth Amendments.

144.   Upon information and belief, one or more of the Defendants, if not all, were present from December 4-6, 2021, when officers at the Pickens County Jail (including, but not limited to, Defendants Young and Hill) used excessive force on Mr. Foster.

145.   Upon information and belief, one or more of the Defendants, if not all, observed officers at the Pickens County Jail (including, but not limited to,

Defendants Young and Hill) repeatedly and unjustifiably beat, tase, and choke Mr. Foster on December 5, 2021, *while he was restrained*, in violation of Mr. Foster's constitutional rights under the Fourth and Fourteenth Amendments to be free from excessive uses of force by law enforcement.

146.   Defendants Hall, Carr, White, and/or Wilburn each had authority over Defendants Young and Hill—as well as any other officers of the Pickens County Jail that were involved in the excessive force used on Mr. Foster on December 5, 2021— and could have stopped their unconstitutional conduct, yet they failed to do so.

147.   As a result of Defendants Hall's, Carr's, White's, and/or Wilburn's failure to stop Defendants Young's, Hill's, and other officers' unconstitutional use of excessive force towards Mr. Foster on December 5, 2021, Mr. Foster was caused to suffer significant physical and mental injuries, including the loss of consciousness, which were independently, collectively, or jointly (*i.e.*, in combination with Mr. Foster's other injuries described in this Complaint) the proximate cause of Mr. Foster's death.

148.   Upon information and belief, Defendants Hall, Carr, Wilburn, Young, and/or other Defendants were present on December 6, 2021, and observed Defendant Justin White and other officers and agents of the Pickens County Sheriff's Office and/or Pickens County Jail use excessive force on Mr. Foster—*while he was restrained*—while loading Mr. Foster in the transport vehicle, in violation of Mr.

Foster's constitutional rights under the Fourth and Fourteenth Amendments to be free from excessive uses of force by law enforcement.

149.   Upon information and belief, Defendants Hall, Carr, Wilburn, and/or Young observed Defendant White enter the transport vehicle from the other side, crawl across the seats, place Mr. Foster in a chokehold, and pull or yank Mr. Foster by the neck inside the vehicle.

150.   Upon information and belief, Defendants Hall, Carr, Wilburn, and Young, as sheriff or deputy sheriffs, each had authority over Defendant White and any other officers involved, and could have commanded them to not use, or cease the use of, excessive force on Mr. Foster; yet they did not to do so.

151.   For example, the Defendants could have (a) commanded Defendant White to not force, or stop forcing, Mr. Foster into the vehicle by pulling/yanking Mr. Foster by his neck; (b) physically intervened to stop Defendant White; or (c) reported Defendant White's actions to someone who could have stopped his unlawful conduct.

152.   The excessive force used by Defendant White and/or other officers while loading Mr. Foster into the transport vehicle on December 6, 2021, not only violated Mr. Foster's constitutional rights, but also directly caused Mr. Foster's death.

153.   As a result of Defendants Hall's, Carr's, White's, and/or Wilburn's failure to stop the unconstitutional and excessive use of force by Defendant White and/or other officers while loading Mr. Foster into the transport vehicle on December 6, 2021, Mr. Foster was unable to breathe while in the back of the vehicle, which independently, collectively, or jointly (*i.e.*, in combination with Mr. Foster's other injuries described in this Complaint) served as the proximate cause of Mr. Foster's death.

**Count V:**
**SUPERVISORY LIABILITY FOR PARTICIPATING IN AND/OR DIRECTING UNLAWFUL ACTS**
*Against Defendants Todd Hall, Justin White, Greg Carr,*
*Drew Wilburn, and Mickey Young*

154.   Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-92.

155.   Plaintiff Anny Pamela Foster, as personal representative of the Estate of Glenn Foster, Jr., brings this claim under 42 U.S.C. § 1983 and Ala. Code § 6-5-410, against Defendants Todd Hall, Justin White, Greg Carr, Drew Wilburn, and Mickey Young in their individual capacities based on the Defendants' personal participation in and/or direction of the unconstitutional acts and omissions of their subordinate officers, which proximately caused the death of Glenn Foster, Jr.

156.   The Defendants' personal participation in and/or direction of the unconstitutional acts and omissions of their subordinate officers relating to the care and safety of Glenn Foster, Jr., violated Mr. Foster's constitutional rights under the Due Process Clause of the Fourteenth Amendment, which guarantees that individuals shall not be "deprive[d] of life, liberty, or property, without due process of law," and prohibits the use of excessive force by law enforcement on pretrial detainees.

157.   Defendants Todd Hall, as Sheriff of Pickens County; Justin White, as the Administrator of the Pickens County Jail; Greg Carr, as Chief Deputy Sheriff; Drew Wilburn, as Lieutenant Deputy Sheriff; and Mickey Young, as Deputy Sheriff; have authority over the subordinate officers who were responsible for the care, custody, and safety of Glenn Foster, Jr., while in custody at the Pickens County Jail, and whose unlawful acts and omissions caused the wrongful death of Glenn Foster, Jr.

158.   Upon information and belief, Defendants Hall, White, Carr, Wilburn, and/or Young each directed, approved of, endorsed, and/or personally participated in the unlawful acts and omissions of their subordinate officers and employees. By doing so, the Defendants violated Mr. Foster's constitutional rights under the Fourth and Fourteenth Amendments and directly caused his death.

159.   Upon information and belief, one or more of the Defendants, if not all, were present from December 4-6, 2021, when officers at the Pickens County Jail (including, but not limited to, Defendants Young and Hill) used excessive force on Mr. Foster.

160.   Upon information and belief, one or more of the Defendants, if not all, were present and observed officers at the Pickens County Jail (including, but not limited to, Defendants Young and Hill) repeatedly and unjustifiably beat, tase, and choke Mr. Foster on December 5, 2021, *while* he was restrained, in violation of Mr. Foster's constitutional right to be free from excessive uses of force by law enforcement.

161.   Each of the Defendants had authority over their subordinate officers and directed, approved of, endorsed, and/or personally participated in the abovementioned unlawful acts or omissions.

162.   As a result of Defendants Hall's, Carr's, White's, and/or Wilburn's personal participation in and/or direction of Defendants Young's, Hill's, and other officers' unconstitutional use of excessive force towards Mr. Foster on December 5, 2021, Mr. Foster was caused to suffer significant physical and mental injuries, including the loss of consciousness, which independently, collectively, or jointly (*i.e.*, in combination with Mr. Foster's other injuries described in this Complaint) served as the proximate cause of Mr. Foster's death.

163.    Despite their knowledge of Mr. Foster's serious medical needs, the advice of trained medical professionals, and their authority and ability to make arrangements for Mr. Foster to receive adequate medical attention, the Defendants deliberately ignored Mr. Foster's needs and directed their subordinates not to provide Mr. Foster with the prompt and adequate medical attention that he required.

164.    The Defendants' refusal to provide Mr. Foster received the medical care he required was not only a violation of Mr. Foster's constitutional rights, but also a direct and proximate cause of Mr. Foster's death.

165.    Upon information and belief, Defendants Hall, Carr, Wilburn, Young, and/or other Defendants were present on December 6, 2021, and observed Defendant Justin White and other officers and agents of the Pickens County Sheriff's Office and/or Pickens County Jail use excessive force on Mr. Foster—*while he was restrained*—while loading Mr. Foster in the transport vehicle, in violation of Mr. Foster's constitutional rights under the Fourth and Fourteenth Amendments to be free from excessive uses of force by law enforcement.

166.    Upon information and belief, Defendants Hall, Carr, Wilburn, and/or Young observed Defendant White enter the transport vehicle from the other side, crawl across the seats, place Mr. Foster in a chokehold, and pull or yank Mr. Foster by the neck inside the vehicle.

167.   Each of the Defendants had authority over Defendant White and/or any other Defendants or officers involved, and directed, approved of, endorsed, and/or personally participated in the excessive use of force on Mr. Foster on December 6, 2021, while loading him into the transport vehicle, in violation of Mr. Foster's constitutional rights under the Fourth and Fourteenth Amendments.

168.   As a result of Defendants Hall's, Carr's, White's, and/or Wilburn's direction and/or personal participation in the unconstitutional and excessive use of force by Defendant White and/or other officers while loading Mr. Foster into the transport vehicle on December 6, 2021, Mr. Foster became unable to breathe while in the back of the vehicle, which independently, collectively, or jointly (*i.e.*, in combination with Mr. Foster's other injuries described in this Complaint) served as the proximate cause of Mr. Foster's death.

**Count VI:**
**SUPERVISORY LIABILITY FOR**
**FAILURE TO TRAIN, SUPERVISE, AND/OR DISCIPLINE**
*Against Defendants Todd Hall & Justin White*

169.   Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-92.

170.   Plaintiff, as personal representative of the Estate of Glenn Foster, Jr., brings this claim against Defendants Todd Hall and Justin White in their individual capacities under 42 U.S.C. § 1983 and Ala. Code § 6-5-410, based on the

Defendants' acts and omissions that resulted in the violation(s) of Mr. Foster's constitutional rights under the Fourth and Fourteenth Amendments, which proximately caused his death.

171.   Defendant Hall, as the Sheriff for Pickens County, was at all relevant times responsible for the training, supervision, and discipline of the deputies, correctional officers, and other officers employed by him, the Pickens County Sheriff's Office, and/or the Pickens County Jail to ensure the health, care, and safety of arrestees, detainees, inmates, and others in the Sheriff's custody.

172.   Such duty required Defendant Hall to provide adequate training, supervision, and discipline to his subordinate officers, employees, and agents— including, but not limited to, Defendants Carr, Wilburn, White, Young, Hill, Easterwood, Brown, and Richardson—regarding (a) the appropriate use of force on suspects, detainees, and inmates; (b) the prompt recognition of suspects', detainees', and inmates' serious medical needs; and (c) the provision of adequate medical care and treatment to the same.

173.   Defendant White, as Administrator of the Pickens County Jail, at all relevant times had the same duties and responsibilities as Defendant Hall, as it relates to the training of law enforcement officials, correctional officers, and other personnel employed to work at the Pickens County Jail.

174.   As described in detail above, Defendants Hall and White personally observed and/or participated their subordinate officers' excessive uses of force with Mr. Foster, failures to recognize his serious medical needs, and/or refusals to provide Mr. Foster with adequate medical care in violation of his constitutional right to be free from unreasonable searches and seizures.

175.   As described in detail above, Defendants Hall and White each maintain a custom or policy which results in deliberate indifference to the constitutional rights of suspects, detainees, and inmates under the Fourth and Fourteenth Amendments.

176.   As described in detail above, Defendants Hall and White were aware of a history of widespread abuse by officers, agents, and employees of the Pickens County Sheriff's Office and/or the Pickens County Jail–in which they subjected suspects, detainees, and inmates (especially Black men) to excessive uses of force, such as excessive tasing; failed to recognize their serious medical needs; and/or refused to provide them with adequate medical care. As a result, Defendants Hall and White were on notice of the need to provide appropriate training, supervision, or discipline to their subordinate officers—including, but not limited to, Defendants Carr, Young, Wilburn, Hill, Easterwood Brown, and Richardson—to prevent future constitutional deprivations.

177.   Despite such knowledge of the serious needs for such training and supervision, Defendants Hall and White failed to adequately train, supervise, or

discipline their subordinate officers—including, but not limited to, Defendants Carr, Wilburn, White, Young, Hill, Easterwood, Brown, and Richardson—who were each responsible for the care, health, and safety of Glenn Foster, Jr., while he was in their custody.

178.   As a result of Defendants Hall's and White's failures to train, supervise, and discipline their subordinate officers, Defendants Carr, Wilburn, White, Young, Hill, Easterwood, Brown, and Richardson subjected Glenn Foster, Jr., to excessive uses of force, failed to recognize his serious medical needs, and denied him the medical care and treatment he required to stay alive.

179.   Defendants Carr, Wilburn, White, Young, Hill, Easterwood, Brown, and Richardson's use of excessive force towards Mr. Foster, their failure to recognize his serious medical needs, and their refusal to provide him with prompt and adequate medical care violated Mr. Foster's constitutional rights under the Fourth and Fourteenth Amendments, and independently, collectively, and/or jointly (*i.e.*, along with Defendants' other unconstitutional acts and omissions described in this Complaint) served as the direct and/or proximate cause of Mr. Foster's death.

180.   In addition to Mr. Foster's death, Defendants' aforementioned acts and omissions caused the Plaintiff, individually, to suffer a loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Foster.

181.   As a result of Defendants' unconstitutional conduct which caused the Plaintiff's injuries and the death of Glenn Foster, Jr., Defendants Hall, White, Carr, Wilburn, Young, Hill, Easterwood, Brown, and Richardson are individually liable to the Plaintiff and to the Estate of Glenn Foster, Jr., for monetary damages to the maximum extent permitted under 42 U.S.C. § 1983.

## Count VII:
## SUPERVISORY LIABILITY FOR UNCONSTITUTIONAL POLICY & PRACTICE
### *Against Defendants Todd Hall and Justin White*

182.   Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1-92.

183.   Plaintiff Anny Pamela Foster, as personal representative of the Estate of Glenn Foster, Jr., brings this claim under 42 U.S.C. § 1983 and Ala. Code § 6-5-410, against Defendants Todd Hall and Justin White in their individual capacities based on the Defendants' unconstitutional customs and policies relating to officers' excessive use of force and deliberate indifference towards the safety of Black men, which proximately caused the death of Glenn Foster, Jr.

184.   Defendants Hall's and White's unconstitutional customs and policies relating to the uses of force and provision of medical care to Black arrestees, detainees, and others in the Defendants' custody directly caused the violation of Mr. Foster's constitutional rights under the Due Process Clause of the Fourteenth

Amendment, which guarantees that individuals shall not be "deprive[d] of life, liberty, or property, without due process of law," and prohibits the use of excessive force by law enforcement on pretrial detainees.

185.   Defendants Hall's and White's unconstitutional customs and policies relating to the uses of force and provision of medical care to Black arrestees, detainees, and others in the Defendants' custody directly caused the violation of Mr. Foster's constitutional rights under the Fourth Amendment, as well, which gives individuals the right to be free from unreasonable searches and seizures by law enforcement, and which encompasses an arrestee's right to be free from excessive uses of force.

186.   Defendants Todd Hall and Justin White, who were at all relevant times the Sheriff of Pickens County and the Administrator of the Pickens County Jail, respectively, created and maintained a policy and/or custom throughout the Pickens County Sheriff's Office and the Pickens County Jail of officers and deputies using objectively unreasonable amounts of excessive force against Black men (including arrestees, detainees, inmates, and other individuals in their custody); as well as acting with deliberate indifference to their safety or serious medical needs.

187.   Specifically, Defendants' policy and/or custom of excessive force towards Black men in their custody includes, but is not limited to:

a)      The use of subjecting Black men to unreasonable amounts of force

while they are restrained, unable to move, or otherwise present no threat to the safety of officers, themselves, or others;

b)   Excessively tasing Black men for sport, fun, amusement, or revenge;

c)   The repeated, unnecessary tasing of Black men while they are restrained, unable to move, or otherwise present no threats; and

d)   The prolonged, unnecessary strangulation of Black men to achieve compliance with officers' instructions.

188.   As evidenced by the multiple instances of excessive uses of force and deliberate indifference towards the safety of Black men by the Defendants' and other officers' of the Pickens County Sheriff's Office and/or the Pickens County Jail, as described in detail above, said policies and/or customs are so persistent, consistent, and wide-spread in practice that they have the same effect as a policy with the force of law.

189.   Upon information and belief, Defendants Hall and White, acting under color of state law, had final policymaking authority concerning the acts and omissions of Defendants White, Carr, Wilburn, Young, Hill, Easterwood, Brown, Richardson, and John Does Nos. 1-5; knew of such acts and omissions; and ratified (or will ratify) Defendants' acts and the basis for them.

190.   Upon information and belief, Defendants Hall and White have determined (or will determine) that the acts of Defendants White, Carr, Wilburn,

Young, Hill, Easterwood, Brown, Richardson, and John Does Nos. 1-5 were in accordance with official policy.

191.   Defendants Hall and White and other policy makers condoned, ratified, and perpetuated their unconstitutional policies and/or customs of excessive force and deliberate indifference to the safety and medical needs of Black men in their custody, as evidenced by the fact that, upon information and belief, no officers, agents, and/or employees of the Pickens County Sheriff's Office or the Pickens County Jail have been disciplined, terminated, "written up," reprimanded, or terminated for the same.

192.   Indeed, Defendants Hall and White have defended multiple legal actions as they relate to Black men in their custody.

193.   Additionally, Defendants' desire to maintain and perpetuate their policies of excessive force and deliberate indifference towards Black men is evidenced by their refusal to cooperate or be transparent with the information, documentation, and evidence relating to the events, circumstances, and causes of not only Mr. Foster's death, but also the death of Wallace Wilder and Michael Broady, Jr.

194.   By the aforesaid acts and omissions of Defendants Hall and White, their subordinate officers knew and still know that they may continue with the same type of unconstitutional misconduct that killed Glenn Foster, Jr.

195.   Defendants Hall's and White's creation, maintenance, and promotion

of policies and/or customs of excessive force and deliberate indifference towards the safety of Black men directly caused the violation of Mr. Foster's constitutional rights under the Fourth and Fourteenth Amendments, in which Pickens County deputy sheriffs and officers of the Pickens County Jail used excessive force against Glenn Foster, Jr. (a Black man) on December 4 to December 6, 2021, and acted with deliberate indifference to his safety and serious medical needs.

196. Said customs and/or policies were the moving force behind the deprivation of Mr. Foster's constitutional rights.

197. Defendants' unconstitutional policies and/or customs independently, collectively, and/or jointly (*i.e.*, along with Defendants' other unconstitutional acts and omissions described in this Complaint) served as the direct and/or proximate cause of Mr. Foster's death.

198. In addition to Mr. Foster's death, Defendants' aforementioned acts and omissions caused the Plaintiff, individually, to suffer a loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Foster.

199. As a result of Defendants' unconstitutional conduct which caused the Plaintiff's injuries and the death of Glenn Foster, Jr., Defendants Hall and White are individually liable to Plaintiff and the Estate of Glenn Foster, Jr., for monetary damages to the maximum extent permitted  under 42 U.S.C. § 1983.

**Count VIII:**
**VIOLATION OF SUBSTANTIVE DUE PROCESS**
*Against All Defendants*

200.   Plaintiff incorporates herein by reference the allegations contained in 1-92.

201.   Plaintiff Anny Pamela Foster, on behalf of herself and as personal representative of the Estate of Glenn Foster, Jr., brings this claim under 42 U.S.C. § 1983 and Ala. Code § 6-5-410, against all Defendants in their individual capacities based on the Defendants' unconstitutional acts and omissions, which proximately caused the death of Glenn Foster, Jr.

202.   Defendants' unconstitutional acts and omissions relating to the safety and treatment of Mr. Foster violated Mr. Foster's, as well as the Plaintiff's, constitutional rights under the Due Process Clause of the Fourteenth Amendment, which guarantees that individuals shall not be "deprive[d] of life, liberty, or property, without due process of law," and prohibits the use of excessive force by law enforcement on pretrial detainees.

203.   Plaintiff had cognizable interests under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in her familial relationship with her husband, Glenn Foster, Jr., Decedent.

204.   The aforementioned actions of the above-named Defendants, as well as other undiscovered potential misconduct, shocks the conscience, in that Defendants acted with deliberate indifference to the constitutional rights of Mr. Foster and the Plaintiff with intent to harm, unrelated to any legitimate law enforcement objective.

205.   Defendants knew or had reason to believe that Mr. Foster was in medical distress, as advised by his family, EMS personnel, Chief Black, and Judge Junkin's December 6th Order.

206.   Furthermore, Defendants acted with knowledge that their actions were going to inflict further injury, yet they continued to excessively and unreasonably abuse Mr. Foster.

207.   Specifically, the following conduct by the above-named Defendants shocks the conscience and violates the Plaintiff's and Mr. Foster's Due Process rights:

a)   Excessively tasing Mr. Foster while he was restrained, stripped naked, and strapped to a chair;

b)   Defendants' prolonged use of headlocks to choke Mr. Foster while he was restrained, stripped naked, and strapped to a chair, to the point Mr. Foster lost consciousness;

c)   Defendants' repeated refusals to follow the recommendations of medical professionals, Mr. Foster's family, and Chief Black, who

advised them of the urgent need to provide Mr. Foster with prompt medical attention;

d)      Defendants' deliberate indifference to Mr. Foster's serious medical needs by refusing and/or failing to provide timely, critical, and adequate medical evaluation and treatment to Mr. Foster as he was exhibiting signs of severe mental distress;

e)      Defendants' deliberate indifference to Mr. Foster's serious medical needs by refusing and/or failing to provide him with timely, critical, and adequate medical care after he was subjected to hours of excessive and extreme torture;

f)      Defendants'—including, but not limited to, Defendant White's—use of headlocks and choking maneuvers to force Mr. Forster into the transport vehicle while he was handcuffed and chained, causing him to become unable to breathe; and

g)      All of the above acts, individually and/or considered together, which caused the death of Glenn Foster, Jr.

208.  Defendants also violated the substantive due process rights of the Plaintiff to be free from unwarranted interference with her spouse.

209.  Defendants' conduct was the direct and proximate cause of Mr. Foster's death.

210.   As a direct and proximate cause of Defendants' actions, Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Foster, her loved one and family member, and she will continue to be so deprived for the remainder of her natural life.

211.   As a direct and proximate cause of Defendants' actions, Mr. Foster experienced severe pain, suffering and loss of enjoyment of life.

### Count IX:
### TORT OF OUTRAGE
*Against All Defendants*

212.   Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-92.

213.   At the aforementioned time and place, Defendants Pickens County, PSCO, Pickens County Jail, Hall, Carr, Wilburn, White, Young, Hill, Easterwood, Brown, Richardson, and John Does Nos. 1-5 intentionally and/or recklessly caused severe emotional distress to Mr. Foster.

214.   Defendants Pickens County, PSCO, Pickens County Jail, Hall, Carr, Wilburn, White, Young, Hill, Easterwood, Brown, Richardson, and John Does Nos. 1-5's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was utterly intolerable in a civilized society.

215.   At all times relevant, Defendants Pickens County, PSCO, Pickens County Jail, Hall, Carr, Wilburn, White, Young, Hill, Easterwood, Brown,

Richardson, and John Does Nos. 1-5 were acting within the course and scope of their employment and/or agency with Defendant Pickens County and, as a result, Defendant Pickens County is vicariously liable for their conduct alleged herein under the principles of respondent superior and/or agency by estoppel and/or otherwise.

216.   As a direct and proximate result of Defendants Pickens County, PSCO, Pickens County Jail, Hall, Carr, Wilburn, White, Young, Hill, Easterwood, Brown, Richardson, and John Does Nos. 1-5's extreme and outrageous conduct as alleged herein, Mr. Foster endured and suffered serious mental injury prior to his death that no reasonable person could be expected to endure.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Honorable Court enter judgement against Defendants, jointly and severally, in an amount exceeding $75,000, including but not limited to:

A.   Compensatory and consequential damages in an amount to be determined by a jury in excess of the Court's jurisdictional amount;

B.   Punitive damages in an amount to be determined by a jury, for the willful, reckless, and malicious conduct of Defendants in their individual capacities;

C.     Equitable relief, including, without limitation, that all Defendants be made to adopt appropriate policies to prevent future instances of misconduct described herein;

D.     Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

E.     Any and all other relief that this Court deems equitable, just, and proper.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury of all claims to triable of the within matter.


**DATED:** April 15, 2024                    Respectfully submitted,


**Diandra S. Debrosse Zimmermann**
**DICELLO LEVITT LLP**

**Diandra S. Debrosse Zimmermann**
**Eli J. Hare**
**Elton H. Darby, III**
**Grantham P. Patterson**
**DICELLO LEVITT LLP**
505 20th Street N, 15th Floor
Birmingham, AL  35203
(205) 855-5700

fu@dicellolevitt.com
ehare@dicellolevitt.com
edarby@dicellolevitt.com
gpatterson@dicellolevitt.com

**Ben Crump\***
**BEN CRUMP LAW**
112 South Calhoun Street
Tallahassee, FL  32301
(800) 715-5999
ben@bencrumplaw.com

**Kenneth Abbarno\*\***
**DICELLO LEVITT LLP**
8160 Norton Parkway
Mentor, OH  44060
(440) 953-8888
kabbarno@dicellolevitt.com

**Éviealle J. Dawkins\***
**DICELLO LEVITT LLP**
801 17th Street NW, Suite 430
Washington, D.C.  20006
(205) 975-2288
edawkins@dicellolevitt.com

***Counsel for the Plaintiff***

\**Pro hac vice* application forthcoming
\*\*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will promptly send a notification of such filing to the following counsel of record:

**Constance Caldwell Walker**
**WEBB MCNEILL WALKER PC**
One Commerce Street, Suite 700 (36104)
P.O. Box 238
Montgomery, AL  36101
(334) 262-1850
cwalker@wmwfirm.com

**Timothy McCool**
**MCCOOL & OWENS**
100 Phoenix Avenue
P.O. Box 270
Carrollton, AL  35447
(205) 367-8125
tim@timmccoollaw.com

*Counsel for Defendants*

**DATED:** April 15, 2024          Respectfully submitted,

**Diandra S. Debrosse Zimmermann**
**DICELLO LEVITT LLP**