FILED

2024 Dec-05 AM 09:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **ANNY PAMELA FOSTER,** *Individually, and as Personal Representative of the Estate of Glenn Foster, Jr.,* | ] ] ] ] ] | |
| **Plaintiff,** | ] ] | |
| **v.** | ] ] | **7:23-cv-1647-ACA** |
| **PICKENS COUNTY, et al.,** | ] ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In December 2021, police officers with the City of Reform, Alabama and sheriff's deputies for Pickens County arrested Glenn Foster, Jr. and transported him to the Pickens County Jail. While Mr. Foster was detained, a deputy and a corrections officer removed him from his cell, restrained him in a chair, and tased him until he fell over, vomited, and lost consciousness. The next day, and as correctional officers prepared Mr. Foster to be transferred to a hospital for an evaluation, the jail administrator dragged Mr. Foster into the transport vehicle by his neck. By the time Mr. Foster arrived at the hospital, he was unresponsive, was foaming at the mouth and nostrils, and had discolored skin. Approximately thirty minutes later, medical staff pronounced Mr. Foster dead.

Plaintiff Anny Pamela Foster, individually and as personal representative of the Estate of Mr. Foster ("the Estate"), filed suit against Defendants Chief Deputy Sheriff Greg Carr, Sheriff Todd Hall, Lieutenant Deputy Drew Wilburn, Administrator of Pickens County Jail Justin White, and Deputy Mickey Young (collectively, the "Sheriff Defendants") and Corrections Officer Willie Brown, Corrections Officer LaDon Hill, Corrections Officer DeMarco Easterwood, and Corrections Officer Derrick Richardson (collectively, the "Correctional Officer Defendants"). (Doc. 1; *see also* doc. 50). The second amended complaint asserts the following claims:

(1) Count One: wrongful death under Alabama's Wrongful Death Act, Ala. Code § 6-5-410, against all defendants;

(2) Count Two: excessive force causing death in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution through 42 U.S.C. § 1983 against all defendants;

(3) Count Three: failure to intervene in the uses of force and denial of medical care in violation of Alabama Code § 6-5-410 and the Fourth and Fourteenth Amendments to the to the United States Constitution through § 1983 against all defendants;

(4) Count Four: supervisory liability against the Sheriff Defendants for their failure to stop the acts of their subordinates;

(5) Count Five: supervisory liability against the Sheriff Defendants for their participation in and/or direction of their subordinates' unlawful acts;

(6) Count Six: supervisory liability against Sheriff Hall and Administrator White for their failure to train, supervise, and/or discipline their subordinates;

(7) Count Seven: supervisory liability against Sheriff Hall and Administrator White for an unconstitutional policy and practice;

(8) Count Eight: violation of Mr. and Ms. Foster's rights to substantive due process guaranteed by the Fourteenth Amendment against all defendants; and

(9) Count Nine: tort of outrage under Alabama law against all defendants and John Does Nos. 1–5.

(Doc. 50 ¶¶ 93–216).

Defendants move to dismiss the second amended complaint, contending that the Estate has not adequately alleged its claims and alternatively, that they are entitled to various immunities for their conduct. (Docs. 51, 55, 56). The court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions.

## I.    BACKGROUND

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b), courts must "accept[] the facts alleged in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024). Accordingly, the court construes the following facts in the light most favorable to Ms. Foster and the Estate.

In the late evening on December 3, 2021, Reform police officers and Pickens County sheriff's deputies arrested Mr. Foster and transported him to Pickens County Jail. (Doc. 50 ¶¶ 19–23). The next day, Reform's chief of police informed Mr. Foster's family that Mr. Foster had been arrested. (*See id.* ¶¶ 24–25).

Mr. Foster's father informed the chief of police that Mr. Foster "suffered from mental health issues that impaired his judgment and caused him to be especially agitated and/or aggressive under stress." (*Id.* ¶ 26). Mr. Foster's father requested that the chief of police arrange for Mr. Foster to be transferred to the psychiatric ward of a local hospital, which he agreed to do. (*Id.* ¶ 29).

On December 5, 2021, Mr. Foster's family paid his bond and went to the Pickens County Jail to facilitate Mr. Foster's conditional release and transfer. (*Id.* ¶¶ 31–34). But Mr. Foster had been "re-booked" on a new set of charges arising from an altercation with another detainee, so Sheriff Hall refused to release Mr. Foster into his family's custody. (Doc. 50 ¶ 35).

That evening, Deputy Young and Officer Hill removed Mr. Foster from his cell and restrained him in a chair in another cell. (*Id.* ¶ 37). "[T]hroughout the evening and into the night," Deputy Young and Officer Hill choked Mr. Foster, stripped him naked, poured water on him, and tased him repeatedly. (*Id.* ¶¶ 38–42). Mr. Foster eventually "fell over onto the floor and vomited blood," but Deputy Young and Officer Hill continued to tase him until and even after he lost consciousness. (*Id.* ¶¶ 40–41).

An employee at Pickens County Jail contacted emergency medical services and requested a vitality check on Mr. Foster. (Doc. 50 ¶ 43). But when emergency medical personnel arrived at Pickens County Jail, Sheriff Hall, Administrator White,

and Deputy Young prevented them from conducting "a complete examination." (*Id*. ¶ 43). Emergency medical personnel recommended transferring Mr. Foster to a hospital for "necessary medical treatment," but "Defendants refused." (*Id*. ¶ 44). So "Mr. Foster remained in the Pickens County Jail throughout the night and did not receive any medical evaluation or medical treatment." (*Id*. ¶ 45).

The next day, the Foster family met with a Pickens County judge and requested that the judge declare Mr. Foster incompetent. (Doc. 50 ¶ 46). The judge ordered an in-person competency examination of Mr. Foster. (*Id*. ¶ 47). So on December 6, 2021, Sheriff Hall; Deputies Wilburn and Young; Administrator White; and the Correctional Officer Defendants[1] prepared to transfer Mr. Foster to a medical center for examination. (*Id*. ¶¶ 48–49, 54).

While preparing for transport, Mr. Foster was restrained at his wrists, ankles, and waist, and he was physically unresponsive. (*Id*. ¶¶ 49–52). So Administrator White "yank[ed]" Mr. Foster by his neck from behind and pulled him into the transport vehicle. (Doc. 50 ¶ 53). Sheriff Hall; Deputies Wilburn and Young; and the Correctional Officer Defendants personally observed Administrator White's actions. (*Id*. ¶ 54). When Mr. Foster arrived at the medical center, he was "unresponsive and foaming at the mouth and nostrils," and his "skin was

---

[1] For clarity, the complaint alleges that all defendants except Deputy Carr were present to prepare Mr. Foster for transport to the medical center. (*See* doc. 50 ¶ 54).

discolored." (*Id*. ¶¶ 55–57). After thirty minutes of unsuccessful chest compressions, he was pronounced dead. (*Id*. ¶ 59).

The Estate contends that Mr. Foster's experience and treatment at the Pickens County jail is not unique to him. (*See* doc. 50 ¶¶ 69–86). The Estate alleges that there have been at least two other incidents of Pickens County sheriff's deputies using excessive and deadly force against arrestees. (*See id*. ¶¶ 71–84). One incident involved an individual in custody, and one incident involved a wellness check at that individual's residence. (*See id*. at 18 ¶¶ 71–84). Both incidents involved individuals who experienced mental health struggles, and the Estate contends that the responding officers were aware of these mental health struggles "due to [their] previous encounters with" each arrestee. (*See id*. ¶¶ 73, 78).

## II.    DISCUSSION

Defendants move to dismiss on four grounds: (1) the second amended complaint is an impermissible shotgun pleading; (2) many of the claims abated with Mr. Foster's death; (3) the Estate and Ms. Foster have not adequately alleged their claims; and (4) Defendants are entitled to qualified and state-agent immunities. (Docs. 55, 56; *see also* docs. 58, 60). Additionally, Defendants assert, on behalf of John Does No. 1–5, that Count Nine violates the general rule against fictitious-party pleading in federal court. (Docs. 51, 52).

As an initial matter, the second amended complaint is not a shotgun pleading. Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." And Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." The Eleventh Circuit has explained that pleadings "that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

To be sure, the complaint is not always a model of clarity. But the complaint does not fit into any of the categories of shotgun pleadings described in *Weiland*, *see* 792 F.3d at 1321–23, nor is it "*virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief," *Turner v. Williams*, 65 F.4th 564, 576 n.11 (11th Cir. 2023) (quotation marks omitted). So the court **DENIES** Defendants' motions to dismiss on shotgun pleading grounds, and the court's analysis will proceed.

First, the court will address the issue of abatement because it applies to many of the Estate's claims. Second, the court will consider whether the Estate has

properly invoked fictitious party pleading in Count Nine. Third, the court will examine Defendants' arguments as to each claim for relief.

### 1. Abatement

Many of the Estate's claims are based on events that occurred the day before Mr. Foster died. Specifically, the Estate alleges that on the evening of December 5, 2021, Deputy Young and Officer Hill "tortured, tased, and abused" Mr. Foster. (*See* doc. 50 ¶¶ 37–45). The next day, Administrator White "strangle[d]" Mr. Foster while loading him into the transfer vehicle. (*Id.* ¶ 53). And while in the transfer vehicle, Mr. Foster "succumb[ed]" to the injuries caused by these events and died because of those injuries. (*Id.* at 14; *see also id.* ¶¶ 101, 105–07). The complaint also suggests that the force used on December 3, 2021 to arrest Mr. Foster was excessive (*see* doc. 50 ¶ 21), but the Estate has not asserted any claims based on this conduct (*id.* ¶¶ 96–98, 105–06, 124–31, 144–49, 159–65, 169–81, 187–95, 207, 212–16).[2]

Defendants contend that all claims except those based on the December 6 strangulation abated with Mr. Foster's death. (Doc. 60 at 12–15, 20–21, 31–32; *see also* doc. 58 at 13–16, 22–23, 28). The Estate's claims asserted under 42 U.S.C. § 1983 and Alabama law apply Alabama's survivorship statute. *See Est. of Gilliam*

---

[2] Defendants construe the complaint to assert claims based on the force used during Mr. Foster's December 3 arrest. (*See, e.g.*, doc. 60 at 3, 11; doc. 58 at 11, 20). The court does not construe the complaint to allege such claims. Nor does it appear the Estate intended to assert such claims. (*See, e.g.*, doc. 64 at 16–17) (summarizing the Estate's understanding of its claims against Defendants). Accordingly, the court **FINDS AS MOOT** the aspect of Defendants' motions that address claims that are not before the court.

*ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1043 (11th Cir. 2011); *see also id*. at 1046–50 (discussing the relationship between 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Ala. Code § 6-5-462). "Under that provision, a deceased's unfiled tort claims do not survive the death of the putative plaintiff." *Id*. at 1046 (quotation marks omitted). Put differently, such unfiled claims abate upon the decedent's death. *See id*.

But claims under Alabama's wrongful death statute and § 1983 claims alleging that unconstitutional conduct caused the decedent's death work differently. *See* Ala. Code § 6-5-410(b); *c.f. Est. of Gilliam*, 639 F.3d at 1044. Those claims survive a decedent's death, meaning such claims can be asserted by a decedent's personal representative. *See* Ala. Code § 6-5-410(a); *Est. of Gilliam*, 639 F.3d at 1047 n.9 ("[I]t is clear that a § 1983 claim alleging that a constitutional violation caused the decedent's death can be asserted through the Alabama wrongful death statute."). Accordingly, the Estate's claims alleging that Defendants' tortious or unconstitutional conduct *caused* Mr. Foster's death survive his death, and claims that seek relief for conduct that did not cause his death do not. *See* Ala. Code § 6-5-410(a)–(b); *Est. of Gilliam*, 639 F.3d at 1046–50; *see also* Ala. Code § 6-5-462.

In Counts One through Eight, the Estate alleges that the December 5th tasing incident involving Deputy Young and Officer Hill (*see* doc. 50 ¶¶ 37–41), and the December 6th strangulation incident involving Administrator White (*id*. ¶ 53),

"independently or collectively" caused Mr. Foster's death (*id.* ¶¶ 95–97, 114, 127, 136, 147, 153, 162, 168, 179, 197, 207(g)). Defendants argue that so long as these claims rely on the December 5th incident, these claims abated with Mr. Foster's death because he did not die until December 6th. (*See* doc. 60 at 12; *see also* doc. 58 at 14). But this argument contradicts the clear assertions in the Estate's complaint: that both the December 5th and December 6th incidents "independently *or* collectively*" caused Mr. Foster's death. (*See* doc. 50 ¶¶ 114, 127, 136, 147, 153, 162, 168, 179, 197, 207(g)) (emphasis added).

Defendants assert that these causation allegations are impermissibly contradictory theories of liability. (Doc. 58 at 20–23; doc. 60 at 15–17, 21–23). But Federal Rule of Civil Procedure 8(d) permits a plaintiff to "set out [two] or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones," and "the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Indeed, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." *Id.* 8(d)(3); *see also Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) ("It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability."). Accordingly, the court rejects Defendants' argument that the Estate's claims in Count One, Count Two, Count Three, Count Four, Count Five, Count Six, Count Seven, or Count Eight abated with Mr. Foster's death.

But Count Nine is different. The Estate alleges that Defendants' "extreme and outrageous" conduct caused Mr. Foster to suffer "serious mental injury *prior to* his death that no reasonable person could be expected to endure." (Doc. 50 ¶ 216) (emphasis added). There is no allegation in Count Nine that this "extreme and outrageous" infliction of "mental injury" caused Mr. Foster's death. (*See id*. ¶¶ 212–16). In response, the Estate argues that Ms. Foster asserts Count Nine on her own behalf, not on behalf of Mr. Foster's estate. (Doc. 64 at 39). But this argument contradicts the allegations in the complaint: that "*Mr. Foster* endured and suffered serious mental injury prior to his death that no reasonable person could be expected to endure." (Doc. 50 ¶ 216) (emphasis added). This claim has therefore abated with Mr. Foster's death, and the court **DISMISSES** Count Nine against the Sheriff Defendants and Correctional Officer Defendants **WITH PREJUDICE**.

2.  Fictitious Party Pleading (Count Nine)

Defendants move the court to dismiss the Estate's claim against the John Does No. 1–5 as improperly named. (Docs. 51, 52). The Estate does not challenge the named defendants' ability to move to dismiss claims against other—albeit, fictitious—defendants (*see* doc. 65), so the court will assume Defendants have that ability.

The Estate instead opposes dismissal of this claim on the ground that if the true identities of these John Does No. 1–5 are ascertained during discovery, the

Estate will not be able to invoke relation-back principles to assert claims against them. (*See id.* ¶ 3); *see also* Fed. R. Civ. P. 15(c) (providing the procedure for when relation back might apply). The court observes however that the Estate asserts only Count Nine against the John Does. (*See* doc. 50 ¶¶ 212–16). And this claim abates no matter the identity of the named defendant(s). *See supra* at 11. Accordingly, the Estate has not established that it will be prejudiced.

"As a general matter, fictitious-party pleading is not permitted in federal court," except "when the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (quotation marks omitted). But here, the complaint describes the defendants as "John Does Nos. 1–5" without further description. (*See* doc. 50 at 1; *see also id.* ¶¶ 189–90, 213–16). That description is insufficient. *Richardson*, 598 F.3d at 738 (holding that a description of "'John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute' . . . was insufficient to identify the defendant among the many guards employed at" the correctional institute). Accordingly, the court **DISMISSES** Count Nine against John Does No. 1–5 **WITHOUT PREJUDICE**.

### 3.  The Adequacy of the Estate's Allegations and Qualified Immunity

Defendants challenge the adequacy of the Estate's allegations, contending that such allegations are "conclusory," "lack sufficient factual detail," and do not satisfy

federal pleading standards. (*See, e.g.*, doc. 58 at 17–19; doc. 60 at 16–17). To survive a motion to dismiss, the Estate must allege "sufficient factual matter, accepted as true, that the complaint states a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). After ignoring conclusory allegations, "we assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief." *Ingram v. Kubik*, 30 F.4th 1241, 1255 (11th Cir. 2022) (internal quotations and citations omitted).

Defendants also invoke the qualified immunity defense (*see, e.g.*, doc. 58 at 5; doc. 60 at 6), "which shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1363 (11th Cir. 2024) Because the Estate concedes Defendants acted within their discretionary authority, (*see* doc. 64 at 20–21), *the Estate* bears the burden of "demonstrat[ing] that qualified immunity is inappropriate." *Plowright*, 102 F.4th at 1363. To carry this burden, the Estate must establish that its allegations "show[] (1) that [each] official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (quotation marks omitted).

The court's analysis will begin with identifying the plausible allegations set out in the complaint to determine if the court can "draw the reasonable inference that

[each] defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court will then consider whether Defendants are entitled to qualified immunity. Again, the Estate does not dispute that Defendants have shown that they were acting in their discretionary authority (doc. 64 at 20–21), so the Estate bears the burden of "showing (1) that [each] official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Plowright*, 102 F.4th at 1363 (quotation marks omitted).

### a. Wrongful Death (Count One)

In Count One, the Estate asserts a claim of wrongful death against all defendants in their individual capacities. (Doc. 50 ¶¶ 93–99). Defendants contend that the Estate inadequately alleges this claim. (Doc. 58 at 17–19; doc. 60 at 16–20). The Estate does not respond to Defendants' challenge to Count One. (*See generally* doc. 64; *see also id*. at 17) (the sole time Count One is mentioned). On reply, Defendants argue that the Estate has abandoned this claim by failing to defend it in the Estate's opposition brief. (*See* doc. 68 at 1–2; doc. 70 at 1).

A plaintiff abandons a claim by failing to defend that claim in response to a defendant's dispositive motion. *See McMaster v. United States*, 177 F.3d 936, 941 (11th Cir. 1999); *see also Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The [plaintiff's] failure to brief

and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."). If a plaintiff abandons a claim by failing to defend it, the district court need not decide the merits of the underlying argument for dismissal. *See, e.g., Rd. Sprinkler Fitters Loc. Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that the district court correctly refrained from deciding an issue the defendant briefed because the plaintiff had abandoned a claim that was "alleged in the complaint" by failing to defend it). Consistent with these precedents, the court expresses no opinion regarding the adequacy of the Estate's allegations in Count One because the Estate has abandoned this claim by failing to defend it in the Estate's response brief.

Accordingly, the court **GRANTS** Defendants' motions as to Count One and **DISMISSES** that claim **WITH PREJUDICE**.

### b. Excessive Force Causing Death (Count Two)

In Count Two, the Estate alleges a claim of excessive force causing death[3] against all defendants in their individual capacities. (*See* doc. 50 ¶¶ 100–18). The

---

[3] Defendants contend that "[t]his count contains four different causes of action," including claims for conduct "prior to and during [Mr.] Foster's arrest," "denial of medical treatment," and "undue punishment and overly harsh conditions of confinement during pretrial detention." (Doc. 58 at 20; doc. 60 at 20). The court does not construe Count Two to assert such claims. Indeed, Count Two appears to be solely an excessive force claim. (*See* doc. 50 at 23) ("Count II: Excessive Force") (emphasis omitted). Nor does it appear that the Estate intended to allege such claims in Count Two. (*See* doc. 64 at 16) (summarizing the Estate's understanding of Count Two). Accordingly, the court **FINDS AS MOOT** the aspect of Defendants' motions that address claims that are not before the court.

Estate asserts this claim through § 1983 and seeks to vindicate the alleged violations of Mr. Foster's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (*Id.* ¶¶ 102–04). In response to Defendants' motions, the Estate concedes "that the Fifth Amendment does not apply to [its] claims" (doc. 64 at 23 n.10), so the court **GRANTS** Defendants' motion and **DISMISSES** that aspect of Count Two.

Whether the Fourth or Fourteenth Amendment applies to Count Two is not readily apparent.[4] The general rule is that the Fourth Amendment prohibits the use of excessive force against arrestees and the Fourteenth Amendment prohibits the use of excessive force against pretrial detainees. *Crocker*, 995 F.3d at 1246. "The Supreme Court long ago described a pretrial detainee as a person who had received a judicial determination of probable cause as a prerequisite to the extended restraint of his liberty following arrest." *Id.* at 1247 (quotation marks omitted; alterations accepted). But the Eleventh Circuit has "acknowledged that the line is not always clear as to when an arrest ends and pretrial detainment begins," and therefore, "the line—for excessive-force purposes—between an arrestee and a pretrial detainee isn't always clear, either." *Id.* (quotation marks omitted).

---

[4] "For purposes of claims under § 1983, three constitutional provisions protect a right to be free from excessive force: the Fourth, Eighth, and Fourteenth Amendments." *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021). The Eight Amendment "prohibit[s] the use of excessive force against convicted prisoners." *Id.* Because Mr. Foster was not a convicted prisoner, the Eighth Amendment clearly does not apply to the Estate's claims.

The second amended complaint contains no allegations regarding whether Mr. Foster received a judicial determination of probable cause (*see* doc. 50), and Defendants make no argument about which constitutional amendment applies to Mr. Foster (*see* docs. 58, 60). The court will presume either amendment could apply. And in any event, the standard for excessive force claims under either amendment are analogous. *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1182 (11th Cir. 2020) ("The Fourteenth Amendment's standard [for showing excessive force] is analogous to the Fourth Amendment's.").

### i.     Adequacy of the Allegations

An "excessive-force claim is governed by a rule of objective reasonableness." *Id*. at 1181 (quotation marks omitted). So the Estate must plead sufficient factual content to establish that, "from the perspective of a reasonable officer on the scene," the use of force "was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

*Deputy Young and Officer Hill*

The complaint alleges that on the evening of December 5, 2021, Deputy Young and Officer Hill removed Mr. Foster from his cell and restrained him in a chair in another cell. (Doc. 50 ¶ 37). While Mr. Foster was restrained, Deputy Young and Officer Hill "placed Mr. Foster in a headlock, causing him to choke and restricting his ability to breathe." (*Id*. ¶ 38). They then began to tase him. (*Id*. ¶ 39).

At some point, Deputy Young and Officer Hill "stripped Mr. Foster naked, poured water on him, and continued to ta[s]e him"; Mr. Foster "fell over onto the floor and vomited blood." (*Id.* ¶ 40). Deputy Young and Officer Hill "continued to ta[s]e [Mr. Foster] while [he] remained on the floor, lying in a puddle of his own vomit[,] and soaked in the water," and Mr. Foster lost consciousness as a result. (Doc. 50 ¶ 41). A day later, Mr. Foster "succumb[ed]" to the injuries he suffered and died. (*Id.* at 14); (*id.* ¶ 59).

The Estate has alleged sufficient factual content to "allow the court to draw the reasonable inference" that Deputy Young and Officer Hill could be liable for the misconduct alleged. *Ingram*, 30 F.4th at 1256 (alteration accepted; quotation marks omitted); *see also Patel*, 969 F.3d at 1182. Therefore, the court will proceed with its qualified immunity analysis as to these defendants.

*Administrator White*

The complaint alleges that on December 6, 2021, while Mr. Foster "was restrained via handcuffs and metal chains around his wrists, ankles, and waist" and remaining still, Administrator White "yank[ed]" Mr. Foster by his neck and "pull[ed] him" by the neck into a vehicle to take Mr. Foster to a medical facility. (Doc. 50 ¶¶ 48–53). While in the transport vehicle, Mr. Foster "succumb[ed]" to the injuries he suffered and died. (*Id.* at 14; *id.* ¶ 59).

Again, the Estate has alleged sufficient factual content to "allow the court to draw the reasonable inference" that Administrator White could be liable for the misconduct alleged. *Ingram*, 30 F.4th at 1256 (alteration accepted; quotation marks omitted); *see also Patel*, 969 F.3d at 1182. Therefore, the court will proceed with its analysis of the qualified immunity defense.

> *Sheriff Hall; Chief Deputy Sheriff Carr and Deputy Wilburn; and Officers Brown, Easterwood, and Richardson*

The complaint contains no specific factual allegations regarding any force used by Sheriff Hall; Deputies Carr and Wilburn; or Officers Brown, Easterwood, and Richardson on either December 5 or 6, 2021. (*See* doc. 50 ¶¶ 18–92). Although the complaint alleges "[t]he Defendants . . . used physical force" against Mr. Foster and includes references to conduct by "other officers at the Pickens County Jail" (*see id*. ¶¶ 37–40, 52), these allegations do not provide sufficient factual content that allows the court to draw the reasonable inference that Sheriff Hall; Deputies Carr and Wilburn; or Officers Brown, Easterwood, and Richardson are liable for any misconduct," *Ingram*, 30 F.4th at 1256; *see also Patel*, 969 F.3d at 1182.

Accordingly, the court **GRANTS** the motions to dismiss (docs. 55, 56; *see also* doc. 58 at 20–23; doc. 60 at 15–17) by Sheriff Hall; Deputies Carr and Wilburn; and Officers Brown, Easterwood, and Richardson as to Count Two because the Estate has not adequately alleged its claim against them.

### ii.    Qualified Immunity

The remaining defendants in Count Two are Administrator White, Deputy Young, and Officer Hill. The Estate's arguments against qualified immunity proceed as follows: (1) under Eleventh Circuit precedent, "the use of force upon a person in police custody is unconstitutional when that person is restrained, incapacitated, or otherwise unable to harm the officers, himself, or others" (doc. 64 at 21); and (2) in each incident of force, Mr. Foster was restrained (*id*. at 23). So according to the Estate, the force used by Officer Hill, Deputy Young, and Administrator White violated Mr. Foster's constitutional rights as clearly established by Eleventh Circuit precedent. (*See id*. at 21–27). The court agrees.

The rule in this Circuit is that "gratuitous use of force" when an individual is "handcuffed and not struggling," not resisting, and not otherwise posing a threat to an officer "constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008); *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 953 (11th Cir. 2019) ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive.") (quotation marks and emphasis omitted); *see also id.* at 955 (observing that the law on gratuitous use of force has been clearly established for "more than ten years"). And the use of gratuitous force is precisely what the Estate has alleged.

According to the complaint, on December 5, Deputy Young and Officer Hill removed Mr. Foster from his cell, restrained him to a chair, and chocked and tased him while he "was restrained and unable to move" until he fell over, vomited, and lost consciousness. (Doc. 50 ¶¶ 37–41). The next day and while Mr. Foster was restrained in handcuffs, Administrator White "yank[ed]" Mr. Foster by his neck. (*Id.* ¶ 53). And Mr. Foster ultimately "succumb[ed] to [the] injuries" caused by these events. (*Id.* at 14); (*see also id.* ¶¶ 100–18). There are no allegations in the complaint that Mr. Foster was struggling or resisting Administrator White, Deputy Young, or Officer Hill during either incident nor are there any allegations that Mr. Foster posed a threat to the safety of any officer, any detainee, or himself. (*See* doc. 50 ¶¶ 37–41, 53).

The Estate has therefore alleged a violation of either Mr. Foster's Fourth or Fourteenth Amendment rights, (*see id.*); *Piazza*, 923 F.3d at 953, and that the law was clearly established at the time of such violations, *Piazza*, 923 F.3d at 955. Accordingly, the court **DENIES** the motions by Administrator White, Deputy Young, or Officer Hill as to Count Two.

### c. Failure to Intervene in Excessive Force and Medical Care (Count Three)

In Count Three, the Estate alleges that "[e]ach Defendant was in a position to intervene to (a) stop the excessive force used on Mr. Foster, and (b) take steps to ensure that Mr. Foster received adequate medical care and attention," yet they failed

to do so thereby causing Mr. Foster's death. (Doc. 50 ¶¶ 123, 127). A state actor "can be liable for failing to intervene when another officer" violates an individual's constitutional rights. *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000). But "[t]his liability . . . only arises when the officer is in a position to intervene and fails to do so." *Id.*; *see also Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) ("[I]t is clear that if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.") (quotation marks omitted; alterations accepted).

Defendants present separate arguments for dismissal as to each theory of liability. (*see* doc. 58 at 23–26; doc. 60 at 21–23). The court will consider each theory in turn.

### i.   Excessive Force

#### *Adequacy of the Allegations*

The complaint alleges two incidents involving excessive force: the incident on December 5 involving Deputy Young and Officer Hill, and the incident on December 6 involving Administrator White. (*See* doc. 50 ¶¶ 124–36). Defendants contend that "the only alleged act of excessive force that did not abate with [Mr.] Foster's death is the . . . alleged strangulation [by Administrator White] on December 6." (Doc. 58 at 23; doc. 60 at 21). Because the court has rejected this

argument, *see supra* at 9–10, and Defendants make no other argument regarding the adequacy of the Estate's allegations regarding their failure to intervene in the use of force on December 5 (*see* doc. 58 at 23–25; doc. 60 at 21–23), the court will not dismiss Count Three on that basis.

Turning to the incident on December 6, Defendants contend that because the Estate "has not stated a viable underlying constitutional violation for excessive force," the Estate cannot "successfully stat[e] a valid claim for failure to intervene." (Doc. 58 at 22; doc. 60 at 23). Because the court has determined that the Estate has adequately alleged a claim of excessive force in Count Two, the court rejects this argument.

Next, Defendants contend that the Estate "fail[ed] to allege the necessary facts showing the locations of the officers, whether they were in fact present when the alleged strangulation occurred, and whether they had notice or a realistic opportunity to intervene." (Doc. 58 at 25; doc. 60 at 23). The complaint alleges that Sheriff Hall, Deputies Wilburn and Young, and the Correctional Officer Defendants "were each present" when Administrator White strangled Mr. Foster, but the complaint does not allege that Deputy Carr was present. (Doc. 50 ¶ 54). Accordingly, the court **GRANTS** the motion as to the claim against Deputy Carr and **DISMISSES** that aspect of Count Three against Deputy Carr.

The complaint further alleges that Sheriff Hall; Deputies Wilburn and Young; and the Correctional Officer Defendants could have stopped Administrator White by (1) physically intervening, (2) asking Administrator White to stop, or (3) reporting Administrator White's conduct to a supervisor. (*Id.* ¶ 135). "Instead, they did nothing." (*Id.*). The court is satisfied that these allegations are sufficient to allege a failure to intervene claim.

### *Qualified Immunity*

The Estate alleges that Mr. Foster's Fourth or Fourteenth Amendment right was violated during the two incidents involving excessive force: the incident on December 5 involving Deputy Young and Officer Hill, and the incident on December 6 involving Administrator White. (Doc. 50 ¶¶ 37–41, 53). Although Defendants did not challenge the adequacy of the Estate's allegations as to the December 5 incident, *see supra* at 23, Defendants invoked the qualified immunity defense, and thus the Estate bears the burden of showing that it has adequately alleged a constitutional violation for that incident. The Estate has not carried this burden as to all defendants.

The complaint contains no specific factual allegations that any defendant other than Deputy Young and Officer Hill was present or in a position to intervene for the use of force on December 5, 2021. (*See* doc. 50 ¶¶ 37–45). Although the complaint alleges that "other officers" at the jail were present, observed, and

participated in the use of force (*see id*.), these allegations do not provide sufficient factual content to allow the court to draw the reasonable inference that Sheriff Hall; Deputies Carr and Wilburn; or Officers Brown, Easterwood, and Richardson are liable for failing to intervene in the constitutional violations perpetuated by Deputy Young and Officer Hill. Accordingly, the court **GRANTS** the motion as to those defendants because the Estate has not adequately alleged a clearly established constitutional violation by them.

Regarding the December 6 incident, the Estate has adequately alleged that Sheriff Hall; Deputies Wilburn and Young; and the Correctional Officer Defendants were able to intervene during the December 6 incident. An officer has a duty to intervene "when a constitutional violation such as an unprovoked beating" occurs. *Ensley*, 142 F.3d at 1407 (quotation marks omitted). And this duty to intervene was clearly established at the time Deputy Young, Administrator White, and Officer Hill used excessive force against Mr. Foster. *Priester,* 208 F.3d at 927 (observing that such duty has been clearly established since at least 1994). Accordingly, Sheriff Hall; Deputies Wilburn and Young; and the Correctional Officer Defendants are not entitled to qualified immunity as to the December 6 incident. The court therefore **DENIES** their motions on that basis.

ii.    **Medical Care**

*Adequacy of the Allegations*

In Count Three, the Estate also alleges that "[e]ach Defendant was in a position to intervene" and "take steps to ensure that Mr. Foster received adequate medical care and attention," yet they failed to do so thereby causing Mr. Foster's death. (Doc. 50 ¶¶ 123, 127). Relying on a district court opinion, Defendants state that "there is no recognized cause of action for failure to intervene to provide medical care." (Doc. 58 at 25) (citing *Buchanan v. Upton*, No. 5:20-cv-90, 2021 WL 4099591, at *2 (S.D. Ga. Aug. 10, 2021), *report and recommendation adopted*, No. 5:20-cv-90, 2021 WL 4099582 (S.D. Ga. Sept. 8, 2021)); (*see also* doc. 60 at 23) (same). Defendants present no other argument as to the sufficiency of the Estate's allegations for this aspect of the claim. (*See* doc. 58 at 25; doc. 60 at 23).

"[A] district court's decisions do not bind other district courts, other judges on the same court, or even the same judge in another case." *Georgia v. President of the U.S.*, 46 F.4th 1283, 1304 (11th Cir. 2022); *see also Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) ("Although a district court would not be bound to follow any other district court's determination, the decision [c]ould have significant persuasive effects."). When a district court intends to rely on non-binding authority, it is not enough that the court "simply cite[s] to" it; the court must also "separately determin[e] that [such authority] is persuasive." *McNamara v. Gov't*

*Emps. Ins. Co.*, 30 F.4th 1055, 1061 (11th Cir. 2022). Here, Defendants make no argument regarding why the court should find that another district court's opinion is persuasive. (*See* doc. 58 at 25; doc. 60 at 23). The court does not find the opinion persuasive in this case.

In *Buchanan*, the magistrate judge observed that he was "not aware of any authority extending the failure to intervene claim to deliberate indifference to medical needs claims." 2021 WL 4099591, at *2. Yet the plaintiff "ha[d] also not made factual allegations tending to show [the defendant] was in a position to intervene in medical treatment through her job as a [s]ergeant and [l]ieutenant at the prison." *Id*. So the magistrate judge recommended dismissal of that claim, *id*., and after the parties did not object to his report and recommendation, the district court adopted his report, accepted the recommendation, and dismissed the plaintiff's failure to intervene claim, *id.*, at *1.

But here, the Estate has identified ways in which Defendants could have intervened through their positions as sheriff deputies and correctional officers at the Pickens County Jail. (Doc. 50 ¶¶ 43–45, 54, 125–35). The court is therefore satisfied that the Estate has alleged sufficient factual content to suggest Defendants were liable for their conduct, distinguishing this case from *Buchanan*.

*Qualified Immunity*

The Estate has not carried its burden to rebut Defendants' qualified immunity defense as to this aspect of its claim. It has not established that Defendants violated Mr. Foster's constitutional rights for their failure to intervene to provide medical care nor that such rights were clearly established at the time of such violation. Indeed, the Estate does not discuss this aspect of their claim at all in their responsive brief. (*See generally* doc. 64; *id*. at 31–34); *see Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326 ("The [plaintiff's] failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."). Accordingly, the court **GRANTS** Defendants' motions as to that aspect of the Estate's claim.

### d. *Supervisory Liability for Failure to Stop (Count Four)*

In Count Four, the Estate asserts a supervisory liability claim against the Sheriff Defendants for their alleged "failure to stop the unconstitutional acts and omissions of their subordinate officers" in using excessive force on Mr. Foster on December 5 and 6, 2021. (Doc. 50 ¶¶ 138, 144–53). "[A] failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and

28

(2) subsequently fails to exercise that authority to stop it." *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010).

### i.    Adequacy of the Allegations

The Sheriff Defendants contend that this claim is duplicative of the failure to intervene claim in Count Three and therefore should be dismissed on the same basis. (Doc. 60 at 24). The Estate responds that the Sheriff Defendants are "mistaken" in that interpretation and that the Estate's allegations are sufficient to state a claim for supervisory liability for "failure to stop." (Doc. 64 at 34). On reply, the Sheriff Defendants concede that a supervisor's failure to stop subordinate's unconstitutional action is a separate claim, but they contend that the allegations remain insufficient as they are conclusory and based upon "information and belief." (Doc. 70 at 8–9) (quotation marks omitted).

As an initial matter, the court does not consider arguments raised for the first time in a reply brief. *See Buckley v. Sec'y of Army*, 97 F.4th 784, 799 n.9 (11th Cir. 2024). But even if the Sheriff Defendants had timely raised this argument, the court would reject it. It is true that allegations based upon "information and belief" can be indicative of the sort of conclusory allegations that do not satisfy federal pleading standards. *See, e.g.*, *Twombly*, 550 U.S. at 551, 555; *see also Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212–13 (11th Cir. 2015). But a court cannot disregard a specific factual allegation only because the plaintiff pleaded it

upon "information and belief." *See, e.g.*, *Doe v. Samford Univ.*, 29 F.4th 675, 692 (11th Cir. 2022) (accepting as true the plaintiff's "'information and belief' allegation"); *Miccosukee Tribe of Indians of Fla.*, 814 F.3d at 1212–13 & n.6.

Although Count Four is grounded, in part, on allegations based "upon information and belief," those allegations nevertheless contain specific, non-conclusory factual content regarding the December 6 incident of excessive force. The complaint first identifies the responsibilities of each of the Sheriff Defendants. (*See* doc. 50 ¶¶ 5–9). Based on these responsibilities, the complaint alleges that each of the Sheriff Defendants "had authority over their subordinate officers and employees." (Doc. 50 ¶ 141). Yet despite this authority, the Sheriff Defendants "never . . . stop[ped] their [subordinates'] unlawful misconduct." (*Id*. ¶ 142).

For example, "upon information and belief," all Sheriff Defendants other than Deputy Carr personally observed Administrator White strangle Mr. Foster. (*Id*. ¶ 54; *see also* doc. 50 ¶ 148). These Sheriff Defendants "each had authority over [Administrator] White" and could have "commanded [Administrator] White to not force, or stop forcing, Mr. Foster into the vehicle by pulling/yanking Mr. Foster by his neck; (b) physically intervened to stop [Administrator] White; or (c) reported [Administrator] White's actions to someone who could have stopped his unlawful conduct." (*Id*. ¶¶ 150–51). But none exercised their authority to do so. (*Id*. ¶ 150). Curiously, the Estate also asserts its claim against Administrator White, who is the

alleged perpetrator of the excessive force on December 6. (*See* doc. 50 ¶¶ 48–54, 137–53).

A supervisor cannot be liable for the failure to stop himself. *See Keating*, 598 F.3d at 765 (indicating that this theory of supervisory liability applies only to "a known constitutional violation by" a subordinate). Accordingly, the court **GRANTS** the motion as to Administrator White. And there are no allegations in the complaint that Deputy Carr knew about Administrator White's conduct, *see id.*, so the court **GRANTS** the motion as to Deputy Carr. Regarding the remaining Sheriff Defendants, the Estate has alleged sufficient factual content "factual content that allows the court to draw the reasonable inference that" they are "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quotations omitted). The court therefore will not dismiss Count Four on the asserted inadequacy of the Estate's pleadings.

Regarding the December 5 incident of excessive force, as described at length, the complaint contains no allegations that any defendants other than Deputy Young and Officer Hill were present for that conduct. (*See* doc. 50 ¶¶ 37–45). To be sure, Deputy Young could have stopped the conduct of his subordinate because the complaint alleges that he was present for these events. (*See id.*). But the complaint contains no allegations regarding the presence of the other Sheriff Defendants. (*Id.*).

Accordingly, the court **GRANTS** the Sheriff Defendants' motion as to those who were not in a position to stop the December 5 event.

## ii.    Qualified Immunity

If a plaintiff has adequately pleaded an underlying constitutional violation, then supervising officers may likewise be liable for their failure to stop such violation. *See Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) ("Plainly, a[] [supervisor] cannot be liable for failing to stop . . . when there was no constitutional violation being committed."). The Estate has adequately pleaded a clearly established constitutional violation of his right to be free from the excessive force that occurred on December 5 and 6, 2021 in Count Two. Accordingly, Deputy Young is not entitled to qualified immunity for his failure to stop the use of excessive force on December 5, and Sheriff Hall, Deputy Wilburn, and Deputy Young are not entitled to qualified immunity for their failures to stop the use of excessive force on December 6. *See id*.

### e. *Supervisory Liability for Participating in and/or Directing Unlawful Acts (Count Five)*

In Count Five, the Estate asserts a supervisory liability claim against the Sheriff Defendants for their alleged "personal participation in . . . the unconstitutional acts and omissions of their subordinate officers" on December 5 and 6, 2021. (Doc. 50 ¶ 155). "[T]o hold a supervisor liable[,] a plaintiff must [plead] that the supervisor either directly participated in the unconstitutional conduct or that

a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014).

### i.    Adequacy of the Allegations

The Sheriff Defendants contend they are entitled to dismissal of this claim because it includes allegations based "upon information and belief," and such allegations "are not entitled to any weight and must be discarded." (Doc. 60 at 24–25) (quotation marks omitted). The court has already explained the rule in this Circuit: allegations based upon information and belief may be entitled to the presumption of truth when such allegations contain sufficient factual content. *See supra* at 29–30 (citing *Samford Univ.*, 29 F.4th at 692). Because the Sheriff Defendants have presented no other argument regarding the adequacy of the Estate's allegations, they are not entitled to dismissal of the claim based on the asserted inadequacy of its allegations.

### ii.    Qualified Immunity

The Estate alleged that Deputy Young and Administrator White directly participated in violating Mr. Foster's constitutional rights. (*See, e.g.*, doc. 50 ¶¶ 37–41, 53). And the unconstitutionality of that conduct was clearly established at the time of it. *See Piazza*, 923 F.3d at 955. So Deputy Young and Administrator White

are not entitled to qualified immunity for this claim, and the court **DENIES** their motion.

Regarding the remaining Sheriff Defendants, although the Estate has alleged Count Five as a "personal participation" claim (*see id*. ¶ 158), the Estate presents no argument nor cites to any allegations regarding specific conduct by each of the remaining Sheriff Defendants (*see* doc. 64 at 38–39). The Estate instead attempts to reframe Count Five as one more generally based on the remaining Sheriff Defendants' alleged failure to stop unconstitutional conduct. (*See* doc. 64 at 38) (citing *Myrick v. Fulton Cnty.,* 69 F.4th 1277, 1297–98 (11th Cir. 2023)). But that is not the theory of liability the Estate alleged in its complaint. (*See* doc. 50 ¶¶ 154–68).

"A plaintiff may not amend her complaint through argument in a brief . . . ." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). In the absence of any other argument, the Estate has failed to rebut the remaining Sheriff Defendants' qualified immunity defense, and the court **GRANTS** the motion as to those defendants.

> f.   *Supervisory Liability for Failure to Train, Supervise, and/or Discipline (Count Six) and for an Unconstitutional Policy & Practice (Count Seven)*

In Count Six, the Estates asserts that Sheriff Hall and Administrator White each failed their duty to "provide adequate training, supervision, and discipline to

[their] subordinate officers, employees, and agents . . . regarding (a) the appropriate use of force . . . ; (b) the prompt recognition of" detainees' "serious medical needs; and (c) the provision of adequate medical care and treatment to the same." (Doc. 50 ¶¶ 171–74). And in Count Seven, the Estate asserts that Sheriff Hall and Administrator White each maintained "unconstitutional customs and policies relating to officers' excessive use of force and deliberate indifference towards the safety of Black men." (*Id*. ¶ 183). Sheriff Hall and Administrator White discuss these claims together (*see* doc. 60 at 25–26), so the court will do the same.

First, Sheriff Hall and Administrator White contend these claims should be dismissed "because [the Estate] has not adequately alleged a constitutional violation by any [of their] subordinate employee[s]." (*Id*. at 26–27). Because the court has determined that the Estate *has* alleged a constitutional violation based on the events on December 5 and 6, 2021, the court rejects this argument.

Second, Sheriff Hall and Administrator White contend "[t]his claim should also be dismissed because Plaintiff has failed to adequately plead a causal connection." (*Id*. at 27). Relevant here, "[a] causal connection may be established when . . . a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so." *Myrick*, 69 F.4th at 1298 (quotation marks omitted). When establishing a causal connection this way, "the deprivations that constitute widespread abuse sufficient to notify the

supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id*. (quotation marks omitted; alterations accepted).

The complaint alleges that Mr. Foster "is the third Black man to die as [a] result of unconstitutional conduct by the Pickens County Sheriff and Sheriff's Deputies." (Doc. 50 ¶ 69). The first incident occurred in 2019 and involved "a 62-year-old mentally ill Black man, [who] was wrongly and needlessly shot and killed by" Sheriff Hall and one of his deputies. (*Id*. ¶ 71). According to the complaint, the decedent "had a long and documented history of . . . schizophrenia," of which the officers "were aware due to previous encounters with" him. (*Id*. ¶ 73). Yet upon the officers' arrival at the decedent's residence for a wellness check, the officers "forcefully" entered his home and tased him; when he tried to get up, the officers shot and killed him. (*Id*. ¶¶ 74–75).

The second incident involves a man who died while in the custody of Pickens County sheriff's deputies "only four months before" Mr. Foster. (Doc. 50 ¶ 82). The deputies "knew [the decedent] from previous interactions and knew that [he] suffered from mental health issues." (*Id*. ¶ 78). The decedent called officers, "reporting that another individual threatened to kill him," and when officers arrived, they arrested the decedent for unrelated charges. (*Id*. ¶¶ 77, 79). Although he "was voluntarily placed in handcuffs," arresting officers "tackled [him] to the ground" and

"repeatedly tased and drive stunned [him] . . . while he was on the ground and handcuffed." (*Id*. ¶¶ 79–80). The decedent was placed in a police vehicle for transport to Pickens County Jail and "died at some point during the transportation to the Pickens County Jail or shortly after his arrival" at the jail. (Doc. 50 ¶¶ 81–82).

Sheriff Hall and Administrator White contend that these two incidents are insufficient because they are "factually dissimilar" to the incidents involving Mr. Foster because Mr. Foster "was killed by excessive force due to strangulation." (Doc. 60 at 29). The court has already explained how this argument contradicts the clear allegations in the complaint: that both the December 5th tasing incident and December 6th strangulation incident "independently, collectively, and/or jointly" caused Mr. Foster's death. (*See* doc. 50 ¶¶ 179, 197). The court rejects this argument because it is based on a false assumption, *i.e.*, that Mr. Foster died by strangulation, which contradicts the allegations in the complaint.

But the court agrees with Sheriff Hall and Administrator White that "two prior incidents [are] not enough" to allege the requisite causal connection. (Doc. 60 at 30). A plaintiff fails to allege a sufficient causal connection when "[t]here is no indication that the[] [alleged] incidents were of continued duration, as opposed to isolated incidents, with one occurring every few years." *Myrick*, 69 F.4th at 1298 (relying on *Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) for the proposition that "four

[incidents] in four years" is sufficient to establish the requisite causal connection) (quotation marks omitted).

Here, the Estate identified one incident that occurred in 2019 and one incident that occurred four months before Mr. Foster's death. (Doc. 50 ¶¶ 71, 76). These three instances, including Mr. Foster's, of excessive force in three years are the sort of "isolated incidents" that are insufficient "to show[] a widespread history of abuse." *Myrick*, 69 F.4th at 1298. Accordingly, the court **GRANTS** the motion by Sheriff Hall and Administrator White and **DISMISSES** Count Six and Count Seven **WITH PREJUDICE** because the Estate has not adequately alleged a history of widespread abuse that put these defendants on notice of the need to correct the alleged constitutional deprivations that caused Mr. Foster's death.

### g. *Violation of Substantive Due Process (Count Eight)*

In Count Eight, Ms. Foster and the Estate allege that Defendants violated Mr. and Ms. Foster's right to substantive due process by causing Mr. Foster's death. (Doc. 50 ¶ 202). Ms. Foster's claim is based on the loss of her spouse (*see id.* ¶¶ 203, 208), and the Estate's claim is based on the conditions that caused Mr. Foster's death (*id.* ¶¶ 207, 209).

### i.    Adequacy of the Allegations

Defendants do not move to dismiss Ms. Foster's claim based on the asserted inadequacy of its allegations (*see* doc. 58 at 26; doc. 60 at 31), so the court will

discuss only the Estate's claim, here. The entirety of Defendants' argument regarding the Estate's allegations is:

> This claim is based upon Defendants' alleged use of excessive force and failure to provide medical care to [Mr.] Foster. This count is duplicative of the excessive force claims and deliberate indifference to serious medical needs claims in Counts One and Two of the Second Amended Complaint. It should be dismissed for the reasons previously discussed in this brief with respect to those claims.

(Doc. 60 at 31; *see also* doc. 58 at 26). As an initial matter, Defendants have misunderstood the scope of the claims in Counts One and Count Two. Count One asserts a wrongful death claim. (*See* doc. 50 at 22) ("Count I: Wrongful Death") (emphasis omitted). Count Two asserts only an excessive force claim. *See supra* at 15 n.3. But either way, Defendants have failed to explain *why* arguments from these claims might apply in the substantive due process context. (*See* doc. 58 at 26; doc. 60 at 31).

Defendants' argument (or lack thereof) is particularly troubling in the light of the "unchartered area" of substantive due process violations. *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003) (quotation marks omitted); *id*. at 1304 ("[Federal courts] must take seriously the Supreme Court's caution against expanding the concept of substantive due process."). "Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id*. at 1305.

"[T]he measure of what is conscience-shocking is no calibrated yard stick." *Id*. (quotation marks omitted). In some circumstances, a state actor's deliberate indifference may be sufficient, "[b]ut[] deliberate indifference that shocks in one environment may not be so patently egregious in another." *Waddell*, 329 F.3d at 1306 (alteration and quotation marks omitted). "[A]nd the concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id*. (alteration accepted; quotation marks omitted). In the absence of any meaningful argument why the Estate's allegations fail to meet this standard, the court will not dismiss the Estate's claims based on the asserted inadequacy of its allegations.

## ii.    Qualified Immunity

Neither the Estate nor Ms. Foster have carried their burden to rebut Defendants' qualified immunity defense. Indeed, the Estate and Ms. Foster do not discuss this aspect of their claim at all in their responsive brief. (*See generally* doc. 64; *see also id*. at 17) (the sole time they discuss this claim). The Estate therefore has not established that Defendants violated Mr. or Ms. Foster's substantive due process rights, nor has the Estate established that such rights were clearly established at the time of such violation. *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326 ("The [plaintiff's] failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been

abandoned."). Accordingly, the court **GRANTS** Defendants' motions as to that aspect of Count Eight.

### III.    CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss. (Docs. 51, 55, 56). The court **DISMISSES** the following claims:

1) Count One: wrongful death under Alabama's Wrongful Death Act, Ala. Code § 6-5-410;

2) Count Two: excessive force causing death in violation of the Fourth and Fourteenth Amendments as to Deputy Carr, Sheriff Hall, Deputy Wilburn, and Officers Brown, Easterwood, and Richardson

3) Count Three: failure to intervene in violation of the Fourth and Fourteenth Amendments through § 1983 as to:
   a) All defendants in the alleged denial of medical care,
   b) Deputy Carr, Sheriff Hall, Deputy Wilburn, and Officers Brown, Easterwood, and Richardson regarding the use of excessive force on December 5, 2021, and
   c) Deputy Carr regarding the use of excessive force on December 6, 2021;

4) Count Four: supervisory liability against Deputy Carr and Administrator White;

5) Count Five: supervisory liability against Deputy Carr, Sheriff Hall, Deputy Wilburn for their participation in and/or direction of their subordinates' unlawful acts;

6) Count Six: supervisory liability against Sheriff Hall and Administrator White for their failure to train, supervise, and/or discipline their subordinates;

7) Count Seven: supervisory liability against Sheriff Hall and Administrator White for an unconstitutional policy and practice;

8) Count Eight: violation of Mr. and Ms. Foster's rights to substantive due process guaranteed by the Fourteenth Amendment against all defendants; and

9) Count Nine: tort of outrage under Alabama law against all defendants, including John Does Nos. 1–5.

Because the court will dismiss all claims against Deputy Carr, the court **DIRECTS** the Clerk of Court to update the docket to **TERMINATE** Deputy Carr as a party to this action.

This case will proceed as to the following claims:

1) Count Two: excessive force causing death in violation of the Fourth and Fourteenth Amendments against Deputy Young, Administrator White, and Officer Hill through § 1983;

2) Count Three: failure to intervene in violation of the Fourth and Fourteenth Amendments through § 1983 based on:
   d) The alleged failure of Deputy Young and Officer Hill to each intervene in the other's use of excessive force on December 5, 2021;
   e) The alleged failure of Sheriff Hall; Deputies Wilburn and Young; and the Correctional Officer Defendants to intervene during the December 6, 2021 incident involving excessive force by Administrator White;

3) Count Four: supervisory liability against Sheriff Hall, Deputy Wilburn, and Deputy Young for their failure to stop the acts of their subordinates; and

4) Count Five: supervisory liability against Deputy Young and Administrator White for their participation in and/or direction of their subordinates' unlawful acts.

**DONE** and **ORDERED** this December 5, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE